PILLSBURY WINTHROP SHAW PITTMAN LLP
Eric Fishman, Esq. (EF-9664)
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Telefax: (212) 858-1500

*Attorney for Bombardier Inc. and*
*Bombardier Transportation GmbH*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOCPROP S.a.r.l., <br><br>         Plaintiff, <br><br>    v. <br><br> Aero Toy Store, LLC, <br><br>         Defendant. | 09-CV-955 (BSJ)(GWG) <br> ECF Case Electronically Filed |
| Bombardier Inc. and Bombardier Transportation GmbH <br><br>         Proposed Intervenors. | |

**MEMORANDUM IN SUPPORT OF PROPOSED INTERVENORS' MOTION FOR**
**PERMISSIVE INTERVENTION AND TO VACATE LETTERS OF REQUEST**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ............................................................................................................. 5

   A.   Bombardier's Proposed Intervenor Complaint ......................................................... 5

       1.   The SOCPROP-Bombardier Agreement ....................................................... 5
       2.   The ATS-SOCPROP Agreement ................................................................... 6
       3.   The Rescheduled Closing Date and Ensuing Negotiations............................ 6
       4.   ATS Terminates; SOCPROP Accepts the New Aircraft ................................ 8

   B.   SOCPROP's New York Action ............................................................................. 9

   C.   SOCPROP'S Moscow Action................................................................................ 10

       1.   SOCPROP's Statement of Claim.................................................................. 10
       2.   The Complete Absence of a Russia Nexus .................................................. 10
       3.   Prejudice to Bombardier .............................................................................. 11

   D.   ATS Consents to Intervention; SOCPROP Refuses ............................................. 12

ARGUMENT ................................................................................................................ 13

I.     THE MOTION TO INTERVENE SHOULD BE GRANTED............................................. 13

   A.   Both Actions Share Common Questions of Fact and Law ..................................... 13

   B.   The Timeliness Factors Each Support Intervention.............................................. 15

       1.   Bombardier Promptly Moved To Intervene.................................................. 15
       2.   Bombardier Will be Prejudiced if it is Not Permitted to Intervene ............. 18
       3.   The Existing Parties Will Not be Prejudiced by Intervention....................... 20
       4.   Other Circumstances Support Intervention.................................................. 22

II.    THE LETTERS OF REQUEST SHOULD BE VACATED ............................................. 23

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*,
 509 F. Supp. 2d 334 (S.D.N.Y. 2007)...............................................................13

*Citigroup, Inc. v. City Holding Co.*,
 97 F. Supp. 2d 549 (S.D.N.Y. 2000)...................................................................22

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
 170 F.R.D. 93 (E.D.N.Y. 1996)...........................................................................14

*Ermenegildo Zegna Corp. v. Lanificio Mario Zegna S.P.A.*,
 No. 85-CV-6066, 1996 WL. 721079 (S.D.N.Y. Dec. 13, 1996).......................23

*Farmland Dairies v. Commissioner of N.Y. Department of Agriculture & Markets*,
 847 F.2d 1038 (2d Cir. 1988)..............................................................................13

*Herbstein v. Bruetman*,
 743 F. Supp. 184 (S.D.N.Y. 1990) ......................................................................23

*Miller v. Silbermann*,
 832 F. Supp. 663 (S.D.N.Y. 1993) ...............................................................15, 18

*Motion Picture Laboratories Technicians Local 780 I.A.T.S.E. v. McGregor & Werner, Inc.*,
 804 F.2d 16 (2d Cir. 1986)..................................................................................22

*New York News, Inc. v. Kheel*,
 972 F.2d 482 (2d Cir. 1992)................................................................................13

*Ronar, Inc. v. Wallace*,
 649 F. Supp. 310 (S.D.N.Y. 1986) .................................................................22, 23

*Rosenshein. v. Kleban*,
 918 F. Supp. 98 (S.D.N.Y. 1996) ......................................................................20

*S.E.C. v. Credit Bancorp, Ltd.*,
 No. 99-CV-11395, 2000 WL 1170136 (S.D.N.Y. Aug. 16, 2000)................18, 20

*Societe Nationale Industrielle Aerospatiale v. United States District Ct. for the S.D. Iowa*, 482 U.S. 522 (1987)...................................................................................24

*Toy Biz, Inc. v. Centuri Corp.*,
 990 F. Supp. 328 (S.D.N.Y. 1998.......................................................................22

## STATUTES

Fed. R. Civ. P. 24................................................................................................................13

N.Y. U.C.C Law § 2-709 (McKinney 2009)................................................................................15

Bombardier Inc. and Bombardier Transportation GmbH (collectively, "Bombardier"), by their attorneys Pillsbury Winthrop Shaw Pittman LLP, respectfully submit this Memorandum of Law in Support of their Motion for Permissive Intervention and to Vacate Letters of Request.

## PRELIMINARY STATEMENT

Every factor that could support permissive intervention is present here. Both the existing and proposed actions concern a used aircraft owned by Plaintiff SOCPROP S.a.r.l ("SOCPROP") and raise the same key issue: whether certain conversations between SOCPROP, Defendant Aero Toy Story, LLC ("ATS") and proposed Intervenor Bombardier, require Bombardier or ATS either to purchase such aircraft or to pay damages for SOCPROP's inability to sell it. SOCPROP claims that ATS and Bombardier stated that ATS would (a) accept delayed delivery of SOCPROP's used aircraft in October 2008, concurrent with the delivery of a new aircraft by Bombardier to SOCPROP, and (b) increase the deposit ATS would forfeit if ATS did not accept delivery at such time. In the pending action, SOCPROP bases it claims against ATS for promissory estoppel and breach of the implied covenant of good faith and fair dealing upon such alleged conversations. In the proposed Intervenor action, Bombardier seeks a declaratory judgment that any such conversations do not render Bombardier liable for SOCPROP's lost sale to ATS, as SOCPROP now contends. The conversations in which Bombardier participated, purely as an accommodation to SOCPROP, were preliminary in nature and never relied upon, and the written record leaves no doubt about it.

Both actions involve the same witnesses – employees and agents of SOCPROP, ATS and Bombardier. Indeed, Bombardier is mentioned throughout SOCPROP's complaint in this action and SOCPROP is seeking to depose abroad, and to obtain documents from, two Bombardier witnesses. Further, to fashion relief in both actions requires intervention. SOCPROP's recovery

1

of damages (if any) from ATS for the lost sale depends entirely upon the amount of damages (if any) SOCPROP may recover from Bombardier for the same lost sale.

In light of this indisputable overlap, Defendant ATS has consented to Bombardier's intervention. SOCPROP, however, objects, claiming Bombardier's intervention will cause undue delay because the parties to the existing action hope to conclude discovery in November. A hearing in a Montréal court regarding SOCPROP's application to depose a Bombardier witness is not, however, scheduled until January 6, 2010, rendering a November close to discovery highly unlikely. What is more, hardly any discovery has yet occurred – approximately 500 pages of documents have been exchanged and the parties have taken only one deposition. Two of the three scheduled depositions in November are by teleconference and can be readily rescheduled. No dispositive motions have been filed. This is a relatively straight-forward case and the issues Bombardier seeks to have adjudicated will not require materially new or different discovery. Indeed, all discovery involving Bombardier can likely be completed by the end of January – the period through which the existing discovery period will likely run in any event. As such, Bombardier's intervention will not cause undue delay.

On the other hand, if Bombardier is not permitted to intervene, it will suffer real prejudice. In September, SOCPROP commenced an action against Bombardier in Moscow claiming that Bombardier is liable for SOCPROP's lost sale to ATS due to Bombardier's alleged assurances and its delay in delivering the new aircraft. SOCPROP contends that Bombardier's delay caused its own delay. In the Moscow proceedings, SOCPROP will be able to offer evidence secured in this action from ATS, Bombardier, and other witnesses. Bombardier, however, will have no comparable opportunity to obtain or introduce any such materials, because depositions and liberal document exchange are not part of the pre-trial practice in Moscow. This

will lead to an imbalance in the parties' access to information and ability to present their positions in the Moscow case, which can be prevented by intervention here.

Further, although not necessarily bound by findings of this Court, a Moscow Court will consider them in evidence. This also militates in favor of intervention. Since the existing action concerns what Bombardier said to SOCPROP about ATS's willingness to accept amended delivery and deposit terms, findings made here may directly impact the proceedings abroad.

SOCPROP may also contend that Bombardier's motion is untimely, as the existing action was commenced in February 2009. That argument should be rejected. Bombardier's interest in these proceedings only arose after September 15, 2009, when the Moscow Court accepted the filing of claims by SOCPROP against Bombardier involving the same issues being adjudicated here. As of today, the Moscow action has still not been properly served upon Bombardier.

Prior to the Moscow action, Bombardier had no reason to expect that SOCPROP would assert claims against Bombardier because SOCPROP has utterly no basis to assert them. Bombardier's agreement with SOCPROP expressly excludes consequential damages such as those arising from SOCPROP's lost sale to ATS. What is more, as a concession to its customer, Bombardier paid SOCPROP in excess of $1.4 million to address the very delays about which SOCPROP now complains. Additionally, SOCPROP always had the ability to deliver its existing aircraft to ATS at any time. As such, Bombardier did not cause the delayed delivery; SOCPROP did. Indeed, contemporaneous writings from SOCPROP's agent expressly show that SOCPROP knew it needed to execute an amended agreement with ATS in order to change the delivery and deposit terms in its ATS contract, and that SOCPROP in no way relied upon Bombardier in delaying its delivery of the used aircraft to ATS. Accordingly, prior to the recent assertion of dubious claims in Moscow, Bombardier simply had no basis to seek intervention.

Intervention is also warranted to afford Bombardier an opportunity to move to enjoin SOCPROP's transparent forum shopping. Bombardier Inc. is a Canadian corporation with no office in Russia. It manufactured and delivered the new aircraft to SOCPROP in Canada. SOCPROP is a Luxembourg company with its principal place of business in that country. No meetings, no correspondence, no anything occurred in Russia. SOCPROP has attempted to manufacture a Russian nexus by also suing Bombardier Transportation, which does have a Moscow office. However, Bombardier Transportation is a German indirect subsidiary of Bombardier Inc. involved in the manufacture and servicing of railway equipment, not aircraft. It was not involved in any way with the SOCPROP transaction. SOCPROP's only connection to Russia is that two of its direct or indirect stakeholders, Roman Abramovich and Eugene Shvidler, are extremely wealthy and prominent Russian businessmen, and, accordingly, some funds used by SOCPROP for the purchase of the new aircraft may have originated in Moscow.

Intervention is necessary as a first step towards halting SOCPROP's demonstrably improper maneuvering. Not only contrary to basic principles underlying U.S. notions of personal jurisdiction, the action in Moscow directly encroaches on this Court's ability to issue an Order regarding the disposition of the aircraft, and poses a substantial risk of duplicative or otherwise inconsistent relief. Fairness and efficiency would both be served by having all claims relating to the same aircraft resolved in this forum, where SOCPROP has already consented to jurisdiction, not in a forum having absolutely nothing to do with the dispute. If intervention is permitted, Bombardier intends promptly thereafter to seek an anti-suit injunction.

Finally, regardless of this Court's intervention determination, Bombardier respectfully requests vacatur of the two Letters of Request issued by this Court for the taking of evidence abroad from Bombardier. If intervention is permitted, there will be no need for the Letters of

Request; all discovery will occur in the context of these proceedings. If intervention is denied, the Letters of Request should still be vacated. When the Court granted that relief, it was not apprised of the Moscow action that SOCPROP was about to commence, and the resulting inequities that would ensue, namely, the ability of SOCPROP (a) to depose a party that it is suing without the party having access to the documents in advance of the deposition and (b) to introduce in the Moscow proceedings the discovery secured from Bombardier without Bombardier having a reciprocal opportunity to obtain such discovery from SOCPROP. To address these problems, Bombardier has proposed that SOCPOP provide Bombardier an opportunity to review the documents produced in this action in advance of the depositions and that the parties proceed with their claims in a forum that will allow both equal access to information. SOCPROP has refused, apparently seeking to capitalize on the differences in the pretrial procedures in Moscow and the United States. The Letters of Request play into SOCPROP's gamesmanship, and should, in all instances, be vacated.

## BACKGROUND[1]

### A. Bombardier's Proposed Intervenor Complaint

The facts alleged in Bombardier's Proposed Intervenor Complaint, submitted herewith, are summarized as follows:

### 1. The SOCPROP-Bombardier Agreement

On or about August 29, 2005, Bombardier, as seller, and SOCPROP, as buyer, executed an Aircraft Purchase Agreement and an Addendum (together, the "APA") governing the purchase and sale of a Global Express XRS ("Aircraft"). Ex. A at ¶ 19; Ex. D. The APA originally stated that the Aircraft would be presented for inspection and acceptance in Dorval,

---

[1] "Fishman Aff." refers to the Affirmation of Eric Fishman dated November 2, 2009; "Horner Aff." refers to the affidavit of Bob Horner dated October 29, 2009; "Kehler-Hvid Aff." refers to the affidavit of Tine Kehler-Hvid dated October 29, 2009; "Yarkov Aff." refers to the affidavit of Professor Vladimir Yarkov dated October 31, 2009, all submitted herewith. All exhibits are annexed to the Fishman Affirmation.

Québec, on or before March 31, 2008. Ex. A at ¶ 22; Ex. D at § 2.2. On or about February 25, 2008, Bombardier changed the presentation date to July 11, 2008, due to delays at one of its subcontractors. Ex. A at ¶ 23. The APA excludes all consequential damages arising out of, *inter alia*, late delivery of the Aircraft. *Id.* at ¶ 21; Ex. D at § 4.2.

Under the APA, SOCPROP was also granted the option to trade in its used aircraft (the "Trade-In Aircraft") for a stipulated value, provided, among other things, SOCPROP sent Bombardier a notice exercising its trade-in option "at least 90 days prior to the scheduled presentation date" set forth in the APA. Ex. A at ¶ 32; Ex. D at 12.1.

## 2.    *The ATS-SOCPROP Agreement*

On or about March 6, 2008, ATS, as seller, and SOCPROP, as buyer, entered into an Aircraft Purchase and Sale Agreement (the "ATS-SOCPROP Agreement") pertaining to the Trade-In Aircraft, with a closing "anticipated to be on or about July 1, 2008." Ex. A at ¶ 33; Ex. E at 1. SOCPROP sought to close on the sale of the Trade-In Aircraft at or about the same time it accepted delivery of the new Aircraft from Bombardier. Ex. A at ¶ 5. Under the ATS-SOCPROP Agreement, ATS agreed to deposit $3 million in escrow, which it would forfeit in the event it breached the contract. *Id.* at ¶¶ 35, 36; Ex. E at §§ 1.1, 7.4.2. On or about May 9, 2008, Bombardier notified SOCPROP that, due to continuing delays at its subcontractor, the scheduled presentation date for the Aircraft was to be delayed until September 12, 2008. Ex. A at ¶ 37. On or about June 23, 2008, ATS and SOCPROP amended the ATS-SOCPROP Agreement to provide that the closing date was "anticipated to be during September 2008." *Id.* at ¶ 38; Ex. E at Amendment § 2(a).

## 3.    *The Rescheduled Closing Date and Ensuing Negotiations*

In mid-July 2008, representatives from Bombardier, ATS, and SOCPROP attended the Farnborough International Air Show in the UK. Ex. A at ¶ 39. In or around the time of that air

show, Bombardier advised SOCPROP that, due to continuing subcontractor delay, the scheduled presentation date for the Aircraft was expected to be in October 2008. *Id.* As an accommodation for the delay and in exchange for not terminating the APA, SOCPROP requested Bombardier to pay liquidated delay damages and to extend the warranty period for the interior of the Aircraft. *Id.* at ¶ 41.

It was also agreed that Bombardier would confer with ATS, an organization with which Bombardier had previously transacted business, about ATS's willingness to accept delivery of the Trade-In Aircraft in October (rather than September) 2008 and to increase its deposit from $3 million to $8 million to show ATS's commitment to the purchase. *Id.* at ¶¶ 42, 43. Bombardier conferred with ATS, which advised that it was still amenable to taking delivery of the Trade-In Aircraft and to increasing the deposit from $3 million to $5 million (rather than $8 million). *Id.* at ¶ 44. Bombardier conveyed that information to SOCPROP. *Id.*

On August 8, 2008, SOCPROP's representative wrote Bombardier as follows: "I am drafting an amendment for ATS . . . and hope there will not be an issue for them to sign this." *Id.* at ¶ 45; Ex. H. On August 19, 2008, SOCPROP advised Bombardier that it was having difficulty finalizing an amendment to the ATS-SOCPROP Agreement for the Trade-In Aircraft: "Townsend at ATS has just confirmed that they do not want to increase the deposit to $5m. Can you please confirm if this was agreed with them or not. Also I am still waiting for written confirmation of your final compensation offer from your contracts department." Ex. at ¶ 46; Ex. I.

On August 25, 2008, Bombardier forwarded to SOCPROP a proposed amendment to the APA in which Bombardier agreed pay SOCPROP liquidated delay damages up to $1.48 million and to extend the warranty period applicable to the Aircraft's interior by an additional six

months. Ex. A at ¶¶ 47-49; Ex. J. On the following day, SOCPROP rejected Bombardier's proposal, writing: "Unfortunately, there was another part to the compensation which required the buyer for the owner's current aircraft to agree to some revised terms. This has not been agreed with them . . . so at the moment the terms attached are not acceptable." Ex. A at ¶ 50; Ex. K. SOCPROP never executed the amendment to the APA proposed by Bombardier. Ex. A at ¶ 51. Likewise, ATS and SOCPROP did not amend the provisions in the ATS-SOCPROP Agreement pertaining to the deposit (which stayed at $3 million) or the closing date (which continued to be "anticipated to be during September 2008"). *Id.* at ¶ 52.

### 4. *ATS Terminates; SOCPROP Accepts the New Aircraft*

On or about October 1, 2008, ATS delivered a Notice of Default to SOCPROP for SOCPROP's alleged failure to tender the Trade-In Aircraft in September and, on October 15, 2008, ATS terminated the ATS-SOCPROP Agreement. *Id.* at ¶¶ 53, 55. On November 10, 2008, notwithstanding its ability to terminate the APA at that time, SOCPROP accepted title to the new Aircraft delivered by Bombardier. *Id.* at ¶ 56. Although not obligated to do so, Bombardier, in the interest of good customer relationships, agreed to give SOCPROP the benefit of the proposed amendment to the APA that SOCPROP had earlier rejected, consenting to delay liquidated damages in excess of $1.4 million. *Id.* at ¶ 57.

SOCPROP now contends that Bombardier caused it to lose its sale to ATS, and claims that Bombardier must accept delivery of the Trade-In Aircraft and pay SOCPROP $45,000,000 for the Trade-In Aircraft. *Id.* at ¶ 62; Ex. C at p. 8. In its proposed Intervenor Complaint, Bombardier seeks, among other things, declaratory judgments holding that Bombardier need not accept delivery of the Trade-In Aircraft or pay SOCPROP any amount for such trade-in, and further declaring that SOCPROP may not recover any damages from Bombardier for its lost sale to ATS. Ex. A at ¶¶ 84-96.

**B.**    **SOCPROP's New York Action**

On February 3, 2009, SOCPROP commenced the instant proceedings against ATS, alleging that ATS breached its agreement to purchase the Trade-In Aircraft. Ex. B. SOCPROP claims to have "lost the consideration it was to receive for the [Trade-In] Aircraft under the contract – the agreed purchase price of $45,000,000" and seeks "damages in an amount that may be calculated pursuant to the relevant provisions of the Uniform Commercial Code." *Id.* at ¶¶ 43, 44. It asserts claims based on breach of contract, promissory estoppel and breach of the implied covenant of good faith and fair dealing. *Id.* at ¶¶ 39-53.

SOCPROP alleges that, after Bombardier informed it of a delay in the delivery of the Aircraft:

> Bombardier communicated directly with ATS regarding the contract with SOCPROP; ATS expressly agreed to further extend the date for delivery of the [Trade-In] Aircraft past the 'anticipated' date of September 2008. Specifically, ATS and Bombardier agreed to coordinate the delivery of the [Trade-In Aircraft] from SOCPROP to ATS, with the delivery of the new [Aircraft] from Bombardier to SOCPROP.

*Id.* at ¶ 5; *see also id.* at ¶ 27. SOCPROP also alleges that it was told that "ATS agreed to increase the non-refundable deposit in escrow to $5,000,000." *Id.* at ¶ 5.

On August 7, 2009, SOCPROP filed a Notice of Motion for the Issuance of Letters of Request to take evidence from Bombardier in Canada and the United Kingdom. Ex. F. The Motion sought deposition testimony and documents from two employees of Bombardier Aerospace, the aircraft division of Bombardier Inc. *Id.* In its Motion, SOCPROP did not apprise the Court that it was about to commence a lawsuit in Moscow against Bombardier, where such evidence could be used. On August 21, 2009, this Court issued the requested Letters of Request. Ex. G. The Québec Superior Court has scheduled a hearing on January 6, 2010 to address Bombardier's objections to the taking of evidence. Fishman Aff. at ¶ 6. Bombardier is not

aware of SOCPROP having yet taken any steps to obtain evidence from Bombardier's UK employee. *Id.* at ¶ 7.

## C.  **SOCPROP'S Moscow Action**

### 1.  *SOCPROP's Statement of Claim*

On or about September 8, 2009, SOCPROP filed an action in Moscow against Bombardier and Bombardier Transportation for their alleged breach of the trade-in provisions of the APA and for purportedly causing SOCPROP to lose the benefit of the ATS-SOCPROP Agreement (the "Moscow Action"). Ex. C. The Court in the Moscow Action accepted the pleading and authorized SOCPROP to proceed with the action on September 15, 2009. Fishman Aff. ¶ 3. In the Moscow Action, SOCPROP seeks an order requiring Bombardier to accept delivery of the Trade-In Aircraft and to pay SOCPROP $31 million pursuant to the trade-in provisions of the APA, plus $14 million in damages for the lost sale to ATS. Ex. C at 8; Yarkov Aff. at ¶ 15. The initial substantive hearing in the Moscow Action has been set for June 2010 even though Bombardier and Bombardier Transportation have not been served in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. Yarkov Aff. at ¶¶ 16, 20.

### 2.  *The Complete Absence of a Russia Nexus*

As detailed in the affidavit of Bob Horner, neither the APA nor the transaction contemplated thereby or any actions taken in connection therewith have any nexus to Moscow. Bombardier is a Canadian corporation with its principal place of business in Montréal and no office in Moscow. Horner Aff. at ¶ 6. SOCPROP is a private limited liability company organized under the laws of Luxembourg with its principal place of business in Luxembourg. Horner Aff. at ¶ 7. The manufacture of the Aircraft occurred primarily in Canada and nothing occurred in Moscow. Horner Aff. at ¶ 8. The Aircraft was delivered and accepted in Dorval,

Québec. Horner Aff. at ¶ 9. The Trade-In Aircraft was owned and operated by SOCPROP, a Luxembourgish company. Horner Aff. at ¶¶ 3, 7. If SOCPROP had exercised its trade-in option, the Trade-In Aircraft had to be delivered to Windsor Locks, Connecticut. Horner Aff. at ¶ 10. The correspondence concerning the Aircraft and Trade-In Aircraft was primarily directed to or from Canada, Luxembourg, the United States or England (where SOCPROP had a representative). Horner Aff. at ¶ 11. No correspondence concerning the APA was directed to Russia and no meeting occurred there. Horner Aff. at ¶¶ 11, 12.

Bombardier Transportation, a German corporation, has no nexus to this action whatsoever. It is in the business of manufacturing and servicing railway equipment, not aircraft. Kehler-Hvid Aff. at ¶ 2. It was not a party to the APA nor involved in any respect with the transactions giving rise to the Moscow Action. *Id*. at ¶ 3. Bombardier Transportation's only connection to Russia is that it has a representative office in Moscow. *Id*. at ¶ 4. SOCPROP's only connection to Russia is that two of its direct or indirect stakeholders, Roman Abramovich and Eugene Shvidler, are extremely wealthy and prominent Russian businessmen, and, accordingly, some of the funds used to purchase the Aircraft may have originated in Russia. Horner Aff. at ¶ 13; Ex. A at ¶ 73.

### 3. *Prejudice to Bombardier*

As explained in the accompanying affidavit of Professor Yarkov, in commercial disputes in Moscow, there is no procedural right to take a deposition and document exchange is very limited. Yarkov Aff. at ¶¶ 17, 19. However, SOCPROP will have the opportunity to submit into evidence in the Moscow Action any depositions or documents it is able to secure in connection with the New York proceedings. Yarkov Aff. at ¶¶ 18, 19. Although Bombardier would have a basis for objecting to the consideration of such evidence, the Moscow Court will have discretion

to consider it. *Id.* Bombardier will lack a comparable opportunity to obtain or submit such evidence, unless permitted to intervene in these proceedings. Yarkov Aff. at ¶ 19.

Courts in Russia will usually not give preclusive effect to an earlier obtained judgment in the United States. Yarkov Aff. at ¶ 21. As such, absent injunctive relief, the New York and Moscow Courts may issue irreconcilable orders concerning the disposition of the Trade-In Aircraft and may award duplicative or otherwise inconsistent relief. On the other hand, although not bound by the determinations of this Court, the Moscow Court will give this Court's findings and judgment due consideration as evidence in the Moscow Action, especially because both proceedings involve the same subject matter, the Trade-In Aircraft. *Id.* As such, the findings reached by the New York Court and its ultimate determination of the merits may affect the outcome in the Moscow Action. *Id.* The inability of Bombardier to participate in the New York proceedings will materially prejudice its ability to defend itself in the Moscow proceedings. *See* Yarkov Aff. at ¶¶ 17, 18, 19.

**D.**    **ATS Consents to Intervention; SOCPROP Refuses**

On October 20, 2009, only approximately one month after becoming aware of the Moscow Action and Bombardier's resulting interest in these proceedings, Bombardier, though its counsel, contacted counsel for ATS and SOCPROP by telephone to discuss the Letter of Request pending before the Superior Court of Québec, as well as the possibility of consolidating the claims SOCPROP made against Bombardier in the Moscow Action with the pending action, so that all claims related to the Trade-In Aircraft could be efficiently resolved in a single forum. Fishman Aff. at ¶¶ 3, 4. Counsel for ATS has consented to Bombardier's intervention. Fishman Aff. ¶ 10. Counsel for SOCPROP, by contrast, told Bombardier on October 27, 2009, to "make the necessary request before the relevant court." Ex. M. This application followed.

**ARGUMENT**

## I.    <u>THE MOTION TO INTERVENE SHOULD BE GRANTED</u>

Intervention is permitted when an applicant "has a claim or defense that shares with the

main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts must also

consider whether permitting intervention "will unduly delay or prejudice the adjudication of the

original parties' rights." Fed. R. Civ. P. 24(b)(3). In evaluating whether an applicant's motion is

timely, the following factors should be considered:

> (1) the length of time the applicant knew or should have known of
> his interest before making the motion; (2) prejudice to existing
> parties resulting from the applicant's delay; (3) prejudice to the
> applicant if the motion is denied; and (4) the presence of unusual
> circumstances militating for or against a finding of timeliness.

*Farmland Dairies v. Comm'r of N.Y. Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043-44 (2d Cir.

1988). The determination of whether to permit a Rule 24(b) applicant to intervene is committed

to the sound discretion of the Court. *New York News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir.

1992). As demonstrated below, common questions of fact and law underlie the existing and

proposed actions, and all of the timeliness considerations weigh heavily in support of

intervention.

### A.    <u>Both Actions Share Common Questions of Fact and Law</u>

Intervention should generally be permitted where, as here, the applicant's "claims are

substantially intertwined with questions of law and fact common to the claims" between the

original parties. *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 509 F. Supp. 2d 334, 342-

43 (S.D.N.Y. 2007) (permitting intervention after action was pending more than one year). In

such situations, intervention will often "hasten the resolution of the issues" between all of the

parties, *id.*, and provide the court with "a different perspective to the case and will contribute

13

relevant factual variations that may assist the court in addressing the . . . issue raised." *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y. 1996).

Here, there can be little dispute that the proposed claims asserted by Bombardier against SOCPROP and the existing claims asserted by SOCROP against ATS share common and essential questions of fact and law. Indeed, Bombardier is mentioned throughout the Complaint in the existing action (Ex. B at ¶¶ 3, 4, 5, 6, 25, 26, 27) and SOCROP is seeking discovery from two Bombardier witnesses (Ex. G). At bottom, both the existing and proposed claims concern the Trade-In Aircraft and who should bear responsibility for SOCPROP's inability to sell it. Both cases center on what ATS stated to Bombardier in July 2008 about ATS's willingness to accept delayed delivery of the Trade-In Aircraft and to increase the deposit under the ATS-SOCPROP Agreement, and what Bombardier conveyed to SOCPROP about that conversation. In the pending action, those facts bear upon whether ATS breached its agreement with SOCPROP in refusing to accept delivery of the Trade-In Aircraft. In the proposed intervenor complaint, those same facts bear upon whether Bombardier caused SOCPROP to lose its sale to ATS.

Not only factually intertwined, both lawsuits involve overlapping questions of law. Common to both, for example, is the issue of justifiable reliance: assuming ATS and Bombardier assured SOCPROP that ATS would accept delivery of the Trade-In Aircraft in October and forfeit a higher deposit in the event ATS failed to accept delivery of the Trade-In Aircraft, was it reasonable, as a matter of law, for SOCPROP to rely upon that statement and not subsequently amend the ATS-SOCPROP Agreement to reflect this purported understanding? In the pending action, that issue bears directly upon SOCPROP's promissory estoppel claim against ATS. In

the proposed pleading, it likewise bears upon whether Bombardier can have any liability for the lost sale.

Remedy questions, too, are intertwined. For example, under Section 2-709 of the New York Uniform Commercial Code, a seller may recover the price of goods when it "is unable after reasonable effort to resell them at a reasonable price." N.Y. U.C.C. LAW § 2-709 (McKinney 2009). In such circumstances, the seller "must hold for the buyer any goods which have been identified to the contract and are still in his control" and, if "resale becomes possible" at a later date, then the "net proceeds of any such resale must be credited to the buyer." *Id.* In order for the Court to apply Section 2-709, it must thus consider what remedies, if any, SOCPROP may obtain against Bombardier with respect to the Trade-In Aircraft. Until the Court determines (a) whether or not SOCPROP has a viable claim against Bombardier, (b) whether Bombardier must accept delivery of the Trade-In Aircraft, and (c) the amount (if any) that SOCPROP may recover in the event of such a trade-in, the Court will not be able to apply Section 2-709 or otherwise determine what relief (if any) SOCPROP may obtain from ATS.

This is one of those cases where the overlap of issues, both factual and legal, is pronounced and genuinely difficult to dispute. The evidence Bombardier has to offer is directly applicable to the issues the Court is considering and will facilitate proper adjudication of the existing claims. As such, Bombardier respectfully submits that the first factor supporting intervention is clearly satisfied.

**B.**     **The Timeliness Factors Each Support Intervention**

       *1.*     ***Bombardier Promptly Moved To Intervene***

The touchstone for determining whether an applicant has promptly moved to intervene is whether the application was made soon after the applicant knew or should have known that it had an interest in the case. *See, e.g., Miller v. Silbermann*, 832 F. Supp. 663, 669-70 (S.D.N.Y.

1993) (holding the application to intervene made three years after action was commenced and then suspended was timely when made shortly after filing of an amended complaint that gave rise to intervenors' interest in action). Here, when SOCPROP commenced the instant action on February 3, 2009, the suit had no bearing upon Bombardier's interests. The case was strictly a contract dispute between ATS and SOCPROP.

What is more, Bombardier had no reason then to expect that it might become involved in an action with SOCPROP involving some of the same questions of fact and law involved in the pending action. To be sure, after ATS rejected delivery of the Trade-In Aircraft, SOCPROP requested that Bombardier purchase the Trade-In Aircraft. Bombardier, however, had no reason to assume that such requests would give rise to a lawsuit. With due respect, SOCPROP's claims against Bombardier are contrived and meritless.

SOCPROP's trade-in option expired months before SOCPROP purported to exercise it. Ex. D at § 12.1. There would have been no reason for Bombardier to have expected a claim premised upon Bombardier's asserted failure to honor the trade-in option in the APA. As for SOCPROP'S lost sale to ATS, the APA expressly states that Bombardier shall have no liability for consequential damages arising from delays in delivery. Ex. D at § 4.2. Furthermore, purely as an accommodation to its customer, Bombardier agreed to pay SOCPROP over $1.4 million in liquidated damages to address the very delay about which SOCPROP now complains. What is more, the notion that Bombardier caused SOCPROP's lost sale to ATS makes no sense: SOCPROP owned and operated the Trade-In Aircraft and thus always had the ability to deliver it at any time. Horner Aff. at ¶ 3. If this were not enough, SOCPROP also had the ability to avoid its "two aircraft problem" by simply rejecting tender of the new Aircraft, an option it had (but failed to exercise) by virtue of the late presentation. *See* Ex. D at § 8.2 (permitting either party to

terminate after six months of delay).

SOCPROP's contention that it did not believe that it needed to amend its contract with ATS because SOCPROP relied upon Bombardier's assurance that ATS would accept late delivery and increase its deposit is demonstrably false, and SOCPROP knows it. On August 8, 2008, SOCPROP's representative wrote Bombardier that he was "drafting an amendment for ATS." Ex. H. On August 19, 2008, SOCPROP advised Bombardier was that it was having difficulty finalizing an amendment to that ATS-SOCPROP Agreement pertaining to the Trade-In Aircraft: "Townsend at ATS has just confirmed that they do not want to increase the deposit to $5m." Ex. I. On August 26, 2008, SOCPROP again wrote Bombardier that it had not yet reached agreement with ATS on the amended delivery and deposit terms. Ex. K. As its own writings show, after the July meeting in Farnborough, SOCPROP knew that any final change to the delivery and deposit terms of the ATS-SOCPROP Agreement had to be negotiated directly by SOCPROP with ATS. The notion that SOCPROP was somehow relying upon Bombardier -- a stranger to the ATS-SOCPROP Agreement that was merely attempting to assist its customer – lacks any support. Under these circumstances, Bombardier had absolutely no reason to expect that it would be embroiled in a lawsuit with SOCPROP concerning the Trade-In Aircraft that is the subject of the instant proceedings.

All of that changed when the Moscow Court accepted SOCPROP's filing on or about September 15, 2009. At that point, the grounds to intervene first arose. That is when Bombardier learned that it had claims and defenses against SOCPROP involving questions of fact and law that were identical to the action pending before this Court. In telephone conversations on October 20, 2009, counsel for Bombardier asked counsel for SOCPROP and ATS to consent to Bombardier's intervention in these proceedings. Fishman Aff. at ¶ 4. In a

letter to SOCPROP's counsel dated October 23, 2009, Bombardier's counsel further elaborated upon its proposal and made other suggestions intended to expedite and facilitate the adjudication of the parties' claims. Ex. L. By letter dated October 27, 2009, SOCPROP rejected Bombardier's request, telling it to "make the necessary request before the relevant court." Ex. M. This application timely followed. *See S.E.C. v. Credit Bancorp, Ltd.*, No. 99-CV-11395, 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (permitting intervention more than three months after intervenor learned of interest in action).

### 2. *Bombardier Will be Prejudiced if it is Not Permitted to Intervene*

"[C]onsiderations of fairness strongly weigh in favor of permissive intervention." *Miller*, 832 F. Supp. at 674. Here, Bombardier will be significantly prejudiced if it is not permitted to intervene. *First*, SOCPROP will have the ability to submit to the Moscow Court documents and depositions secured in these proceedings from Bombardier, ATS and other relevant witnesses, whereas Bombardier, if not permitted to intervene, will have no comparable access to discovery or ability to present its case in Russia. In Russian proceedings, depositions do not occur and document exchange is extremely limited. Yarkov Aff. at ¶¶ 17, 19. The marked differences in the pretrial practice in the United States and Russia create an inequitable situation that SOCPROP, by refusing to consent to Bombardier's intervention, is attempting to exploit.

*Second*, not only will the parties have unequal access to discovery in the event intervention is denied, the discovery that occurs will be flawed and contrary to basic notions of fairness. Prior to being apprised of SOCPROP's intention to file an action against Bombardier in Moscow, this Court issued a Letter of Request to two foreign tribunals, asking them to subpoena two Bombardier Aerospace employees to appear for a deposition and to produce documents. As matters presently stand, if such depositions are allowed to proceed, SOCPROP will be given the

right to depose witnesses from a company that it is suing, without the witnesses having the ability to review in advance of the deposition documents SOCPROP has obtained in discovery – a basic right afforded any party deponent. Bombardier has requested that SOCPROP provide it with access to the documents produced in this action prior to the deposition of Bombardier's employees; SOCPROP has not consented to this request. Exs. L and M.

*Third,* while courts in Moscow will not necessarily give res judicata effect to findings and judgments of a U.S. court, they will treat them as evidence and give them due weight. Yarkov Aff. at ¶ 21. As the instant proceeding will involve findings as to what Bombardier did and did not say to ATS and SOCPROP, it is very important that Bombardier have an opportunity to participate in them. Any findings here may very well impact the proceedings abroad. *Id.*

*Fourth,* Bombardier would be severely prejudiced if it did not have an opportunity to intervene and seek to enjoin SOCPROP from proceeding with its recently filed Moscow Action.[2] As matters presently stand, SOCPROP is suing Bombardier in a forum having absolutely no nexus to the parties' dispute. Bombardier is a Canadian corporation, with no office in Russia, which manufactured and delivered the Aircraft in Canada. Horner Aff. at ¶¶ 6, 8, 9. SOCPROP is a Luxembourg company with its principal place of business in Luxembourg. *Id.* at ¶ 7. If SOCPROP had exercised its trade-in option, the Trade-In Aircraft was to be delivered to Connecticut. *Id.* at ¶ 10; Ex. D at § 12.2(a). No correspondence was directed to or came from Russia and no meetings happened there. Horner Aff. at ¶¶ 11, 13. All documents are located elsewhere.

The only nexus to Russia that SOCPROP has been able to manufacture is the fact that Bombardier Transportation has a representative office in Moscow. Bombardier Transportation,

---

[2]    If intervention is permitted, Bombardier intends promptly thereafter to file a motion seeking to temporarily or permanently enjoin SOCPROP from proceeding with its action in Moscow against Bombardier.

however, is a German indirect subsidiary of Bombardier, in the business of manufacturing and servicing railway equipment, not aircraft. Kehler-Hvid Aff. ¶ 2. It is not a party to the agreements at issue and had absolutely no involvement in the transactions giving rise to this lawsuit. *Id.* at ¶¶ 3, 4. It is difficult to imagine an instance of more blatant or gratuitous forum shopping. SOCPROP's only connection to Russia is that two of its direct or indirect stakeholders, Roman Abramovich and Eugene Shvidler, are extremely wealthy and prominent Russian businessmen, and some of the funds used to purchase the Aircraft may have originated from Russia. Horner Aff. at ¶ 13; Ex. A at ¶ 73.

Not only violative of U.S. due process principles, the Moscow proceedings are apt to encroach upon this Court's ability to fashion a remedy and pose a substantial risk of irreconcilable orders. This Court and the Mocow Court may, for example, issue conflicting directives concerning the disposition of the Trade-In Aircraft or award duplicative or otherwise inconsistent relief. A Moscow court need not give preclusive effect to an earlier issued judgment in these proceedings. Yarkov Aff. at ¶ 21. Under these circumstances, intervention is necessary so that Bombardier is given an opportunity to seek an anti-suit injunction and have all claims concerning the Trade-In Aircraft properly consolidated in one forum.

### 3.    *The Existing Parties Will Not be Prejudiced by Intervention*

Where discovery is ongoing and the claims of the intervening party involve the same subject matter as the pending action, incidental discovery delays should not prevent intervention. *See Credit Bancorp, Ltd.*, 2000 WL 1170136, at *2 (finding motion for intervention timely because "[d]iscovery, while ongoing for several months, has not progressed so far that it will be unduly delayed or complicated by [the] intervention. In addition, [the intervenor] does not seek to present any causes of action which are factually or legally distinct in a significant way from those already asserted by the [other parties] in this action."); *Rosenshein. v. Kleban*, 918 F. Supp.

98, 106-07 (S.D.N.Y. 1996) (permitting intervention where the parties were engaged in discovery and the plaintiff and proposed intervenor were expected to seek "similar information from defendants and advanc[e] similar legal theories").

Here, any delay resulting from Bombardier's intervention would be insignificant and not prejudicial to the parties. Recognizing this, ATS has consented to Bombardier's intervention. The New York Action is a straight-forward dispute. No dispositive motions have been filed and there is nothing about the action requiring urgent disposition. Although the parties are nearing the conclusion of the discovery period, minimal discovery has thus far occurred.[3] The parties have only exchanged approximately 500 pages of documents and only one deposition has been taken. Fishman Aff. ¶ 5. Two depositions are scheduled to take place by teleconference in November. *Id.* The deposition of Bombardier's employee in Montréal is being contested at a hearing scheduled by the Québec Superior Court for January 6, 2010; regardless of the outcome, no deposition of that witness will occur before mid to late January. *Id.* at ¶ 6. And it appears that SOCPROP has not yet taken any steps to secure the deposition of Bombardier's UK employee. *Id.* at ¶ 7.

Accordingly, there will be no undue delay here. If this Court permits Bombardier to intervene, it would seek information similar to that which has already been exchanged between SOCPROP and ATS, and therefore, collateral issues would not be introduced. Indeed, given the commonality of the factual and legal issues and the limited discovery that has occurred, Bombardier's intervention is not apt to cause discovery to be materially extended beyond the end of January—the period of time in which discovery is already slated to occur in these proceedings.

---

[3] The docket indicates that the discovery period was to close on September 21, 2009, although we understand that counsel in the existing case have stipulated to extend discovery at least through November. Ex. M.

Indeed, these proceedings may well move more expeditiously if Bombardier is permitted to intervene. In the absence of intervention, there will be hearings abroad on the Letters of Request. Because SOCPROP is seeking to exploit differences in the pretrial practice of the United States and Russia, Bombardier is opposing the discovery requested and the timing of a final determination as to such discovery is, at this point, unknown. If, by contrast, Bombardier is permitted to intervene and to secure equal discovery of SOCPROP, such collateral litigation can be entirely avoided and discovery can proceed expeditiously.

### 4. Other Circumstances Support Intervention

SOCPROP may contend that intervention should not here be permitted because it filed the Moscow Action before Bombardier sought to intervene. The "first-filed rule" provides that the first of two filed actions concerning the same parties and issues generally "takes priority absent 'special circumstances' or a balance of convenience in favor of the second." *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 555 (S.D.N.Y. 2000). Circumstances "justifying an exception [to the first-filed rule] have been held to be present when the first suit . . . was motivated solely by forum shopping." *Id.* at 556 (citing *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 332 (S.D.N.Y. 1998)). In fact, according to the Second Circuit, "the chief 'special circumstance' . . . is [the court's] interest in discouraging forum shopping." *Motion Picture Lab. Technicians Local 780 I.A.T.S.E. v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986).

As noted, the fact that SOCPROP is forum shopping is self-evident. Although its claims have absolutely no nexus to Russia, SOCPROP chose to bring an action against Bombardier in a Moscow court. And though its claims have absolutely nothing to do with Bombardier Transportation, SOCPROP named Bombardier Transportation in its lawsuit just because the company has an office in Moscow. Where there is evidence of forum shopping, "[s]uch a tactic is not to be condoned." *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 319 (S.D.N.Y. 1986)

(declining to stay litigation in favor of a parallel foreign proceeding where there was evidence of the defendant's forum shopping). This is, accordingly, a situation where the first-filed rule should have no application.

SOCPROP may also contend that comity considerations weigh against intervention, but any such argument would likewise be misplaced. Comity considerations are not impacted just because two courts consider the same matter. *See Herbstein v. Bruetman*, 743 F. Supp. 184, 187-88 (S.D.N.Y. 1990) ("The general rule of comity is that the domestic court should exercise jurisdiction concurrently with the foreign court.").[4] Moreover, courts frequently find that comity concerns should not preclude the exercise of jurisdiction over a case where, as here, allowing the case to go forward in the U.S. court would be efficient, *Ermenegildo Zegna Corp. v. Lanificio Mario Zegna S.P.A.*, No. 85-CV-6066, 1996 WL 721079, at *3 (S.D.N.Y. Dec. 13, 1996), and not permitting the case to go forward would compromise basic notions of justice and fairness. *See Ronar, Inc.*, 649 F. Supp. at 318-19. SOCPROP should not be permitted to frustrate intervention by bringing an action in a court having no nexus to the dispute in an obvious effort to leverage differences in pretrial practice to its advantage.

## II. THE LETTERS OF REQUEST SHOULD BE VACATED

Regardless of this Court's determination with respect to intervention, Bombardier respectfully requests vacatur of this Court's August 21, 2009 Letters of Request, seeking (a) the Superior Court of Québec's assistance in facilitating the deposition of Mr. Horner and (b) the Senior Master (Queen's Bench Division) of the Supreme Court of England and Wales' assistance in facilitating the deposition of Mr. Christopher Degoumois. The Supreme Court has stated that "American courts, in supervising pretrial proceedings, should exercise special vigilance to

---

[4]  To be sure, comity issues must be considered when an applicant seeks an anti-suit injunction, but such issues are not yet ripe.

protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for the S.D. Iowa*, 482 U.S. 522, 546 (1987). "When it is necessary to seek evidence abroad . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Id.* "American courts should . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations . . . ." *Id.* "Objections to 'abusive' discovery that foreign litigants advance should therefore receive the most careful consideration." *Id.*

In this case, the Court issued its Letters of Request on August 21, 2009. Ex. G. Less than one month later, SOCPROP instituted the Moscow Action, naming Bombardier as defendant. Ex. C. Were SOCPROP to depose Mr. Horner or Mr. Degoumois at this time, it would, for all intents and purposes, be taking the deposition of a party, though Mr. Horner and Mr. Degoumois would not have the benefit of reviewing relevant SOCPROP documents or other information SOCPROP has obtained in discovery.[5] What is more, deposition testimony and documents secured could be used against Bombardier in the Moscow Action without Bombardier having the benefit of reciprocal discovery. Yarkov Aff. at ¶¶ 18, 19. The use of discovery in this manner would clearly be an abuse of SOCPROP's discovery request.

This Court did not have the benefit of considering these facts when it issued the Letters of Request.[6] Under the circumstances, the taking of Mr. Horner's or Mr. Degoumois' deposition or the securing of documents from them would be inequitable. United States courts should not be used to circumvent the procedural limitations imposed by courts in other countries. Should the

---

[5] Bombardier has requested such documents, but SOCPROP has not agreed to provide them. Ex. L and M.

[6] Bombardier does not mean to imply that counsel for SOCPROP failed to disclose relevant information to the Court. Counsel for SOCPROP has advised that it is not involved in the Moscow proceeding. This, however, does not change the fact that the Court did not have an opportunity to consider this critical piece of information or that SOCPROP itself failed to so apprise its counsel of this matter.

Court permit Bombardier's intervention in the case, Bombardier would, of course, not object to the requested depositions and document discovery, as Bombardier would have the benefit of reciprocal discovery pursuant to the Federal Rules of Civil Procedure. Accordingly, Bombardier respectfully requests vacatur of the Letters of Request.

## CONCLUSION

For all of the foregoing reasons, Bombardier requests that its Motion for Permissive Intervention and to Vacate the Letters of Request be granted.

Dated: New York, New York
      November 3, 2009

PILLSBURY WINTHROP SHAW PITTMAN LLP

Respectfully submitted,

Eric Fishman, Esq. (EF-9664)
1540 Broadway
New York, NY 10036-4039
(212) 858-1000

Attorney for Proposed Intervenors
*Bombardier Inc. and Bombardier*
*Transportation GmbH*