Lauren E. Aguiar
Colm P. McInerney
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -x
                       :

SOCPROP S.à.r.l.,                :

               :     09 Civ. 00955 (BSJ) (GWG)
          Plaintiff,     :     **ECF CASE**
               :     <u>**Electronically Filed**</u>

     - against –       :

               :

Aero Toy Store, LLC      :

               :

        Defendant.     :

               :

- - - - - - - - - - - - - - - - - - - - - - - - - -x
               :

BOMBARDIER INC. AND    :
BOMBARDIER TRANSPORTATION  :
GMBH              :

               :

     Proposed Intervenors.  :

               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# MEMORANDUM OF LAW OF PLAINTIFF IN OPPOSITION TO PROPOSED INTERVENORS' MOTION FOR PERMISSIVE INTERVENTION <u>AND TO VACATE LETTERS OF REQUEST</u>

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 4

I.     SOCPROP'S ACTION AGAINST ATS ......................................................... 4

    (A)     ATS Agrees to Purchase an Aircraft From SOCPROP .......................... 4

    (B)     SOCPROP and ATS Agree to an Amendment ....................................... 5

    (C)     ATS Attempts to Terminate the Agreement ........................................... 5

    (D)     SOCPROP Commences This Action Against ATS ................................. 5

    (E)     SOCPROP Seeks the Deposition of Two Non-Parties .......................... 6

II.    THE PROCEEDING IN RUSSIA AGAINST BOMBARDIER ......................... 7

ARGUMENT ............................................................................................................. 8

III.   BOMBARDIER HAS FAILED TO ALLEGE AN INDEPENDENT BASIS
      FOR SUBJECT MATTER JURISDICTION AND THUS INTERVENTION
      WOULD DESTROY DIVERSITY AND DIVEST THIS COURT OF
      JURISDICTION ............................................................................................. 8

    (A)     Bombardier's Intervention Would Destroy the Court's Diversity of
          Citizenship Jurisdiction ......................................................................... 8

    (B)     Bombardier Cannot Invoke Supplemental Jurisdiction Under 28 U.S.C.
          § 1367 .................................................................................................... 9

IV.    THE REQUIREMENTS FOR PERMISSIVE INTERVENTION HAVE NOT
      BEEN MET .................................................................................................... 13

    (A)     Bombardier's Motion is Not Timely ....................................................... 13

    (B)     The Actions Do Not Share Common Questions of Law and Fact .......... 15

    (C)     SOCPROP Will Be Prejudiced If Bombardier Is Permitted to Intervene .............. 17

    (D)     Bombardier Will Not Suffer Prejudice If It Is Not Permitted to
          Intervene ................................................................................................ 19

(E)   There Are No Other Circumstances Supporting Intervention .................................22

V.   BOMBARDIER'S MOTION TO VACATE THE LETTERS OF REQUEST
SHOULD BE REJECTED.............................................................................................24

(A)   SOCPROP Is Not Attempting to "Abuse" Its Discovery Requests ......................24

(B)   Bombardier's Motion to Defeat the Letters of Request Is Before the
Wrong Court ..........................................................................................................25

CONCLUSION.........................................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### CASES

*AT&T Corp. v. Sprint Corp.*,
  407 F.3d 560 (2d Cir. 2005)......................................................................................19

*Alston v. Coughlin*,
  109 F.R.D. 609 (S.D.N.Y. 1986) ................................................................................18

*Bank of New York v. Bank of America*,
  861 F. Supp. 225 (S.D.N.Y. 1994) .........................................................................9, n.2

*Blohm Voss v. The M/V Olympia Explorer*,
  No. 05 Civ. 7753, 2006 WL 2472044 (S.D.N.Y. Aug. 4, 2006) ......................................13, 14

*CCS Communication Control, Inc. v. Law Enforcement Associates, Inc.*,
  No. 84 Civ. 1274, 1984 WL 756 (S.D.N.Y. Aug. 13, 1984) ...................................................18

*Chautauqua County v. International Insurance Co.*,
  No. 88-557E, 1989 WL 13461 (W.D.N.Y. Feb. 15, 1989).......................................................15

*China Trade & Development Corp. v. M.V. Choong Yong*,
  837 F.2d 33 (2d Cir. 1987).....................................................................................21, n.5

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000)..........................................................................22, n.7

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*,
  629 F.2d 786 (2d Cir. 1980)........................................................................................8, 9

*Dar El-Bina Engineering & Contracting Co. v. Republic of Iraq*,
  79 F. Supp. 2d 374 (S.D.N.Y. 2000).................................................................................12

*Ermenegildo Zegna Corp. v. Lanificio Mario Zegna S.P.A.*,
  No. 85 Civ. 6066, 1996 WL 721079 (S.D.N.Y Dec. 13, 1996).................................................23

*Esther Sadowsky Testamentary Trust v. Syron*,
  No. 08-CV-5221, 2009 WL 1285982 (S.D.N.Y. May 6, 2009) .............................................15

*Franceskin v. Credit Suisse*,
  214 F.3d 253 (2d Cir. 2000)...........................................................................................9

*Herbstein v. Bruetman,*
    743 F. Supp. 184 (S.D.N.Y. 1990) .................................................................23, 24, n.8

*Hnot v. Willis Group Holdings, Ltd.*, 234 F. App'x 13 (2d Cir. 2007) ...................................13, 14

*Kleiman v. O'Neill,*
    No. 03-CV-3829, 2008 WL 5582453 (E.D.N.Y. Dec. 30, 2008).......................................12, 13

*Lyndonville Savings Bank & Trust Co. v. Lussier,*
    211 F.3d 697 (2d Cir. 2000)...........................................................................................10

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.,*
    46 F. Supp. 2d 249 (S.D.N.Y. 1999).............................................................................19

*In re MTBE Products Liability Litigation,*
    613 F. Supp. 2d 437 (S.D.N.Y. 2009).......................................................................11, 13

*MasterCard International Inc. v. Argencard Sociedad Anonima,*
    No. 01 Civ. 3027, 2002 WL 432379 (S.D.N.Y. Mar. 20, 2002) .............................21, 21, n.5

*Mastercard International Inc. v. Visa International Service Association,*
    471 F.3d 377 (2d Cir. 2006)....................................................................14, 15, 22, n.6

*McCulloch v. Town of Milan,*
    No. 07 CV 9780, 2008 WL 2986257 (S.D.N.Y. July 17, 2008)...........................................10

*Metso Minerals Inc. v. Powerscreen International Distribution Ltd.*, No. CV 06-1446,
    2007 WL 1875560 (E.D.N.Y. June 25, 2007) .......................................................................25

*Metzler v. Bennett,*
    No. 97-CV-0248, 1998 WL 187454 (N.D.N.Y. Apr. 15, 1998)...........................................17

*Mitchell v. Faulkner,*
    No. 07 Civ. 2318, 2009 WL 585882 (S.D.N.Y. Mar. 5, 2009) .............................................17

*Motion Picture Laboratories Technicians Local 780 v. McGregor & Werner, Inc.,*
    804 F.2d 16 (2d Cir. 1986).......................................................................... 22, n.7, 23

*National American Corp. v. Federal Republic of Nigeria,*
    425 F. Supp. 1365 (S.D.N.Y. 1977)..............................................................................18

*New York Regional Interconnect Inc. v. Pataki,*
    No. 07-CV-122, 2007 WL 1490823 (N.D.N.Y. May 15, 2007).........................................20, 21

*In re New York Trap Rock Corp.*, 160 B.R. 876 (S.D.N.Y. 1993),
    *aff'd in part and rev'd in part on other grounds*, 42 F.3d 747 (2d Cir. 1994) .........................12

iv

*Philip Morris Inc. v. Heinrich*,
    No. 95 Civ. 0328, 1998 WL 122714 (S.D.N.Y. Mar. 19, 1998) .............................................12

*Ronar, Inc. v. Wallace*,
    649 F. Supp. 310 (S.D.N.Y. 1986) ..........................................................................................23

*Scheiner v. Wallace*,
    No. 93 Civ. 0062, 1996 WL 633418 (S.D.N.Y. Oct. 31, 1996) ............................................22

*Siteworks Contracting Corp. v. Western Surety Co.*,
    461 F. Supp. 2d 205 (S.D.N.Y. 2006).................................................................................10, 11

*Sterling National Bank v. Longa*,
    No. 99 Civ. 8978, 2000 WL 1341449 (S.D.N.Y. Sept. 15, 2000) ...........................................9

*Toy Biz, Inc. v. Centuri Corp.*,
    990 F. Supp. 328 (S.D.N.Y 1998) ...................................................................................22, n.7

*Tulip Computers International B.V. v. Dell Computer Corp.*,
    254 F. Supp. 2d 469 (D. Del. 2003)........................................................................................25

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) ...............................................13

*Union Switch & Signal v. St. Paul Fire & Marine Insurance Co.*,
    226 F.R.D. 485 (S.D.N.Y. 2005) .......................................................................................18, 21

*United States v. Visa U.S.A., Inc.*,
    No. 98 Civ. 7076, 2000 WL 1174930 (S.D.N.Y. Apr. 18, 2000) .....................................17, 18

## STATUTES

28 U.S.C. § 1367(a) ......................................................................................................................9

28 U.S.C. § 1367(c)(2)................................................................................................................11

28 U.S.C. § 1367(c)(4)................................................................................................................11

N.Y. U.C.C. Law § 2-309(1) (McKinney 2002)........................................................................16

N.Y. U.C.C. Law § 2-706(1) (McKinney 2002).................................................................17, n.3

N.Y. U.C.C. Law § 2-708(1) (McKinney 2002).................................................................17, n.3

N.Y. U.C.C. Law § 2-709 (McKinney 2002) .............................................................................16

Plaintiff SOCPROP S.à.r.l. ("SOCPROP") respectfully submits this Memorandum of Law in Opposition to Bombardier Inc.'s and Bombardier GmbH's ("Bombardier") Motion for Permissive Intervention and to Vacate Letters of Request (the "Motion").

## PRELIMINARY STATEMENT

Bombardier's Motion to intervene should be rejected, as it (i) would destroy this Court's diversity jurisdiction; (ii) is untimely; (iii) is based on numerous false premises; and (iv) relies on a distorted characterization of the claims asserted by SOCPROP in New York and Russia.

As a preliminary matter, Bombardier has failed to plead a valid jurisdictional basis upon which the Court could even entertain its complaint. Bombardier's intervention would destroy the Court's diversity of citizenship jurisdiction, and the case could be dismissed on that basis alone.

Moreover, Bombardier's claim that "every factor" supporting permissive intervention "is present here," is simply not true. First, Bombardier's intervention motion is untimely. This Action was commenced in February 2009, and Bombardier was aware of the case since its inception. If Bombardier actually believed that its presence was so central to this Action (which SOCPROP submits is *not* the case), then Bombardier had all the information necessary to make that determination nine months ago, yet failed to move to intervene. Only now, when SOCPROP initiated a separate and valid proceeding against Bombardier in Moscow (the "Russian Proceeding"), Bombardier finally has come forward and wants to intervene in this case -- apparently because it would rather litigate in New York than in Moscow. It is too late.

As for the other requirements for permissive intervention, they also are not

present here.  Bombardier has failed to accurately describe the key elements of the claims in the New York and Moscow actions.  This case was commenced in February 2009 by SOCPROP against Aero Toy Store ("ATS") (hereinafter the "Action"), and principally involves a breach of contract claim.  The governing law is New York.  The forum selection clause in the SOCPROP/ATS contract required that the litigation be commenced in New York.  On the other hand, the proceeding commenced by SOCPROP against Bombardier in Moscow involves a *different* contract not currently before this Court.  English law governs those claims.  Bottom line, there is negligible legal overlap between the two disputes.

In addition, SOCPROP's recovery from ATS does not depend -- let alone depend "entirely" -- on the amount of damages it obtains from Bombardier in the Russian Proceeding.  SOCPROP is seeking damages from ATS pursuant to their contract; whether SOCPROP recovers damages from Bombardier does not impact its contract claim against ATS.

The minimal factual overlap in this case and the Russian Proceeding involves ATS's communications with Bombardier on a very limited issue.  To that end, SOCPROP is seeking the non-party deposition of a Bombardier employee on this narrow subject matter. SOCPROP is not, as Bombardier contends, seeking document discovery from this witness.

Not only would Bombardier's intervention divest the Court of jurisdiction, and be based on a tenuous overlap between the two actions, but it also would prejudice SOCPROP.  SOCPROP's dispute with ATS, a straightforward contractual dispute nearing the end of the discovery phase, would be significantly delayed with new pleadings, facts and legal issues.  Months of additional litigation would ensue, as the parties respond to the Proposed Intervenor Complaint, file counterclaims, litigate the anti-suit injunction motion that Bombardier intends to file *and* exchange additional discovery materials.

In contrast, there is simply no prejudice to Bombardier if its intervention motion is denied.  An alternative forum exists -- the Moscow Court of Arbitration -- in which it may defend itself and file any necessary counterclaim against SOCPROP.  Nor is SOCPROP attempting to use any discovery it obtains in this Action in the Russian Proceeding; in fact, it has stipulated to that effect.  Thus, Bombardier will suffer no hardship if the Moscow Court does not allow pretrial depositions or discovery, because SOCPROP will be operating under the same rules.  Bombardier's cries that the Russian Proceeding may give preclusive effect to rulings by this Court do not stand up to scrutiny:  this Court will interpret a contract governed under New York law, whereas the Moscow Court will examine a separate contract governed by English law.

The "other circumstances" that Bombardier claims support intervention (preventing forum shopping and the absence of comity) in fact counsel *against* intervention. The Court should deny intervention in this case because there is absolutely no nexus between the Bombardier dispute and this forum:  all of the parties are foreign, the contract is based on English law, and events giving rise to the dispute, the witnesses and the evidence all lie abroad.  Bombardier falsely accuses SOCPROP of "forum shopping" by filing an action in Russia, yet the Bombardier-SOCPROP Agreement did not contain any forum selection clause.  The contract was drafted on Bombardier letterhead and contained Bombardier's standard terms; if Bombardier had wanted to include a forum selection clause, it should have included one in the contract.  And Bombardier (a manufacturer of corporate aircraft) is well aware that its planes often are purchased for use by high net worth individuals in foreign countries such as Russia.  Moreover, the Moscow Court has ruled that there is sufficient evidence before it to proceed to a hearing on the merits.  Bombardier may contest that court's jurisdiction, but it should do so before that court -- not seek to intervene here.  Given the

absence of a forum selection clause mandating litigation in this forum, and the lack of any tangible connection between the Bombardier dispute and this forum, it is unclear why this Court would want to entertain Bombardier's requests for declaratory judgments regarding its rights under another contract, let alone seek to interfere with a foreign court's ability to decide the matter. And as for comity considerations, the Court *may*, at its discretion, deny intervention where, as here, a foreign court is already handling the matter that Bombardier would rather litigate here.

Bombardier's other motion -- to vacate the Letters of Request duly signed by this court on August 21, 2009 -- should be denied. Its three professed arguments for vacatur are baseless. First, SOCPROP is not seeking document discovery from Bombardier, nor does SOCPROP seek to use any deposition testimony of a Bombardier employee from this case in the Russian Proceeding. Second, while Bombardier argues that SOCPROP is requesting "the deposition of a party," Bombardier has not been permitted to intervene (nor should it be), and thus is not a party to this Action. Third, SOCPROP's decision to file suit against Bombardier in Russia in September 2009 (which happened to post-date this Court's signing of the Letters of Request) was in no way improper and the two events were not connected.

## STATEMENT OF FACTS

## I.   SOCPROP'S ACTION AGAINST ATS

### (A)   ATS Agrees to Purchase an Aircraft From SOCPROP

SOCPROP and ATS entered into an Aircraft Purchase and Sale Agreement (the "Agreement") on March 6, 2008, whereby ATS agreed to purchase an aircraft from SOCPROP (the "Aircraft") for $45 million. (*See* Affirmation of Lauren E. Aguiar in Support of Plaintiff's Opposition to Motion to Intervene and to Vacate Letters of Request ("Aguiar Aff.") Ex. A, ¶ 17.) The Agreement did not contain a set date for delivery of the Aircraft.

4

(*See* Aguiar Aff. Ex. A at ex. a, Agreement § 4.1 (delivery of the Aircraft was "anticipated to be on or about July 1, 2008").)

### (B)    SOCPROP and ATS Agree to an Amendment

On June 23, 2008, SOCPROP and ATS entered into an Aircraft Purchase and Sale Agreement Amendment Agreement (the "Amendment Agreement") which provided that the Aircraft delivery was "anticipated to be during September 2008." (Aguiar Aff. Ex. A, ¶ 26.)  The Amendment was signed so that SOCPROP could attempt to coordinate sale of the Aircraft to ATS with its purchase of a new Global Express XRS Jet (the "XRS Jet") from Bombardier Inc. -- which was experiencing production delays.  (*See* Heagren Aff. ¶ 8.)

### (C)    ATS Attempts to Terminate the Agreement

In late summer 2008, Bob Horner, Bombardier Inc.'s Senior Vice President of Sales, represented to SOCPROP that he had spoken with ATS, and that ATS agreed to further extend the anticipated delivery date (*see* Aguiar Aff. Ex. D, Letter of Request to Superior Court of Quebec at 4).  Based on the flexible language of the Amendment Agreement and the representations by Bombardier, SOCPROP intended to deliver the Aircraft to ATS in October or early November 2008.  However, on October 1, 2008, ATS sent SOCPROP a Notice of Default, abruptly claiming that delivery must have occurred in September 2008.  ATS attempted to terminate the Agreement on October 15, 2008.  (Aguiar Aff. Ex. A, ¶ 34.)  SOCPROP rejected ATS's purported termination, and proceeded to rectify the Aircraft's Discrepancies and arrange for delivery to ATS.  ATS, however, refused to accept delivery of the Aircraft.  (Aguiar Aff. Ex. A, ¶¶ 35-37.)

### (D)    SOCPROP Commences This Action Against ATS

On February 3, 2009, SOCPROP filed a Complaint against ATS in this Court, pursuant to the New York forum selection clause in the Agreement (the "Action").  (*See*

Aguiar Aff. Ex. A at ex. a, Agreement § 7.20.)  The Complaint alleges claims for breach of

contract, promissory estoppel and breach of the duty of good faith and fair dealing.  (Aguiar

Aff. Ex. A, ¶¶ 39-53.)  Following ATS's responsive pleadings, the parties exchanged two sets

of interrogatories, document requests and documents, and took several depositions.  The

parties agreed to complete all remaining party depositions in November 2009.  When

Bombardier moved to intervene, ATS requested a postponement of the two remaining

depositions, pending the resolution of Bombardier's motion.  (Aguiar Aff. ¶¶ 4-6.)

### (E)    SOCPROP Seeks the Deposition of Two Non-Parties

During the discovery period, SOCPROP sought the depositions of Mr. Horner

and another Bombardier employee, Mr. Christophe Degoumois, concerning their discussions

with ATS.  Bombardier would not voluntarily produce the witnesses unless SOCPROP

agreed to a general release of any potential claims against Bombardier; SOCPROP could not

agree to this condition.  Bombardier informed SOCPROP on July 13, 2009 that it viewed this

Action "as a potential litigation involving Bombardier."  (Aguiar Aff. ¶¶ 8-10; *id.* Ex. C.)

SOCPROP filed Letters of Request to obtain the depositions; the Letters of Request were

signed by this Court on August 21, 2009 --  one directed to a Canadian court (where Mr.

Horner was located), and one directed to an English court (where Mr. Degoumois was

thought to be located).  (Aguiar Aff. ¶¶ 11-12.)  SOCPROP learned that Mr. Degoumois was

no longer resident in England, and did not pursue his deposition.  (Aguiar Aff. ¶ 13, n.1.)

Meanwhile, it engaged local counsel in Quebec to obtain Mr. Horner's deposition.

SOCPROP presented its motion to take Mr. Horner's deposition to the Superior Court of

Quebec (the "Superior Court") on October 28, 2009, and the Superior Court has scheduled

February 10, 2010 to hear and rule on Mr. Horner's objections to the motion.  A deposition of

Mr. Horner, if granted, likely would occur shortly thereafter.  (Affidavit of Francois Mainguy

in Support of Plaintiff's Opposition to Motion to Intervene and to Vacate Letters of Request ("Mainguy Aff.") ¶¶ 3-9.)

## II.     THE PROCEEDING IN RUSSIA AGAINST BOMBARDIER

SOCPROP and Bombardier Inc. had entered into an agreement in 2005, which required Bombardier Inc. to deliver the XRS Jet to SOCPROP, in Quebec, Canada, on or before March 31, 2008 (the "Bombardier Agreement," Affirmation of Eric Fishman, Esq. in Support of Motion to Intervene and Motion to Vacate Letters of Request ("Fishman Aff.") Ex. D, § 2.2.)  It also contained a provision whereby SOCPROP could ask Bombardier to accept a trade-in of its current aircraft (the aircraft it later agreed to sell to ATS.)  (*Id.*, § 12.1.)

SOCPROP granted several requests by Bombardier Inc. to extend the delivery date of the XRS Jet, which was not delivered until November 10, 2008.  (Affidavit of Paul Heagren in Support of Plaintiff's Opposition to Motion to Intervene and to Vacate Letters of Request ("Heagren Aff.") ¶¶ 6-7)  On December 19, 2008, SOCPROP notified Bombardier that it was invoking the Bombardier Agreement's trade-in provision.  Bombardier, however, would not agree to a trade-in.  (*Id.* ¶ 11.)

On September 8, 2009, SOCPROP commenced an action against Bombardier Inc. and Bombardier Transportation GmbH in the Arbitrazh Court of Moscow (the "Moscow Court") to enforce the trade-in provision of its contract with Bombardier (the "Russian Proceeding").  The Bombardier Agreement is governed by the laws of England and Wales and does not contain a forum selection clause.  (Heagren Aff. ¶ 5.)  The Moscow Court issued a decision on September 15, 2009, accepting the claim and commencing legal proceedings.  (Declaration of Mikhail Andreevich Rozenberg in Support of Plaintiff's Opposition to Motion to Intervene and to Vacate Letters of Request ("Rozenberg Decl.") ¶ 9.) It requested that SOCPROP provide it with any additional evidence that it would rely on to

support its claim, and Bombardier provide it with any written objections to the claim and, if it

wished, a written motion to dismiss. (Aguiar Aff. Ex. F at 1.) On October 13, 2009, the

Moscow Court conducted a preliminary hearing and then issued a ruling on October 20. This

ruling determined that SOCPROP had presented sufficient evidence for the court to proceed

with the case, and it set a hearing date of June 21, 2010. It ordered Bombardier to submit at

that hearing any written objections to SOCPROP's claim. (Rozenberg Decl. ¶ 12; Aguiar Aff.

Ex. G at 1-2.) On November 4, 2009, Bombardier filed a Motion to Intervene with this Court.

## ARGUMENT

III.  **BOMBARDIER HAS FAILED TO ALLEGE AN INDEPENDENT BASIS FOR
SUBJECT MATTER JURISDICTION AND THUS INTERVENTION WOULD
DESTROY DIVERSITY AND DIVEST THIS COURT OF JURISDICTION**

   (A)  **Bombardier's Intervention Would Destroy
the Court's Diversity of Citizenship Jurisdiction**

Bombardier claims that "[t]his Court has jurisdiction over the subject matter

of this action pursuant to 28 U.S.C. § 1332" and that "[c]omplete diversity of citizenship

exists between the parties." (Fishman Aff. Ex. A, ¶ 12.) This is not true. Bombardier's

intervention would destroy diversity as there would be aliens on both sides of the case:

SOCPROP on the one side, and Bombardier Inc. ("a Canadian corporation with its principal

place of business in Montreal, Quebec") and Bombardier Transportation GmbH ("a German

corporation . . . with its principal place of business in Berlin") on the other. (*See id.* ¶¶ 15-

16).[1] It is beyond dispute that "the presence of aliens on two sides of a case destroys

diversity jurisdiction." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629

F.2d 786, 790 (2d Cir. 1980) (holding that where aliens were on both sides of action diversity

---

[1]  The Court's jurisdiction in this Action is premised on diversity of citizenship pursuant to 28 U.S.C.
§ 1332(a)(2). SOCPROP is a foreign company and ATS is a Florida limited liability company with its
principal place of business in Florida. (Aguiar Aff. Ex. A ¶¶ 12-14.)

was lacking); *see also Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000) (holding that diversity jurisdiction did not exist in action between Argentine citizen and Swiss bank, as alien parties were present on both sides of action).[2]  As a proposed intervenor, the burden is on Bombardier to demonstrate an independent ground for jurisdiction, which it has failed to do.  "[T]here must be an independent jurisdictional basis for Rule 24(b) intervention."  *Sterling Nat'l Bank v. Longa*, No. 99 Civ. 8978, 2000 WL 1341449, at *1 (S.D.N.Y. Sept. 15, 2000) (dismissing intervening parties where no independent basis of jurisdiction existed for their intervention).

**(B)      Bombardier Cannot Invoke Supplemental
Jurisdiction Under 28 U.S.C. § 1367**

Assuming Bombardier invites the Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, the claims in Bombardier's Proposed Intervenor Complaint do not satisfy the requirements for supplemental jurisdiction.  Section 1367(a) requires that, in order for the Court to exercise supplemental jurisdiction, Bombardier's claims against SOCPROP must be "so related to claims" in this Action "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Here, Bombardier's claims do not come close to meeting this strict test.  For starters, two of the so-called "causes of action" in Bombardier's proposed complaint -- Count IV, requesting an anti-suit injunction and Count V, seeking vacatur of the Letters of Request (*see* Fishman Aff. Ex. A, ¶¶ 97-109) -- are not causes of action at all, but merely requests for relief.  Of Bombardier's *actual* causes of action, two of the three (Count I, a request for a declaratory

---

[2]      Even if Bombardier tries to argue that the presence of aliens on both sides does not necessarily destroy diversity, it has also been held that "diversity jurisdiction does not encompass cases between foreigners on one side and foreigners and citizens on the other."  *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 228 n.4 (S.D.N.Y. 1994).  Here, an alien (SOCPROP) would be litigating against two aliens (Bombardier Inc. and Bombardier GmbH) and ATS.

judgment that Bombardier did not breach its contract with SOCPROP and Count III, Bombardier Transportation's request for a declaratory judgment that it is not liable for damages under Bombardier's contract with SOCPROP) are wholly unrelated to this Action. (*See id.* ¶¶ 84-88, 97-104.) Thus, Bombardier's proposed claims fail to satisfy Section 1367(a), as there is not "substantial overlap" between them and SOCPROP's claims in this Action. *See McCulloch v. Town of Milan*, No. 07 CV 9780, 2008 WL 2986257, at *4 (S.D.N.Y. July 17, 2008) (holding that "there must be substantial overlap before supplemental jurisdiction will be exerted."); *see also Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 705 (2d Cir. 2000) (declining to exercise supplemental jurisdiction "[b]ecause the state and federal claims share no common nucleus of operative fact").

Regarding the one Bombardier claim that is arguably related to this Action (Count II, a request for a declaratory judgment regarding Bombardier's liability for damages to SOCPROP) (*see* Fishman Aff. Ex. A, ¶¶ 89-92), it is noteworthy that it is not responsive to any claim made by SOCPROP in this Action. The correct forum for Bombardier to make this claim is in the Moscow Court. In fact, all three of Bombardier's requests for declaratory judgments are merely responsive to the claims filed by SOCPROP in the Russian Proceeding. Thus the Moscow Court should hear these claims. Indeed, it has been held that a party cannot intervene as a defendant, solely to assert a new claim against a nondiverse plaintiff, and invoke a federal court's supplemental jurisdiction because "[t]he intervenor must be potentially liable to the plaintiff on the primary claim in order to be treated as a defendant to whom supplemental jurisdiction may apply under Section 1367(b)." *Siteworks Contracting Corp. v. W. Surety Co.*, 461 F. Supp. 2d 205, 209-10 (S.D.N.Y. 2006) (denying intervention where the intervenor's liability against the plaintiff would be "a separate matter governed by a separate agreement not before this Court at this time" (quoting 16 James Wm. Moore et al.,

*Moore's Federal Practice* § 106.46 (3d ed. 2003)).  Bombardier is not, of course, without a

remedy; it may defend the suit that SOCPROP has brought against it in Russia.  *See id.* at

213 ("The results here will not preclude [the intervenor] from fully litigating its claims

elsewhere.").

Second, even where supplemental jurisdiction exists, a court may decline to

exercise it if "the claim [proposed to be added] substantially predominates over the claim or

claims over which the district court has original jurisdiction."  28 U.S.C. §1367(c)(2); *see*

*also In re MTBE Prods. Liab. Litig.*, 613 F. Supp. 2d 437, 444-45 (S.D.N.Y. 2009) (state law

claims "substantially predominate[d]" over federal claims where "*first* . . . [they raised an

issue] not implicated in any way by the [federal] claim" and "*[s]econd* . . . the state law

claims seek compensatory, injunctive and declaratory relief, whereas the federal claim seeks

a narrow form of injunctive relief").  Bombardier's claims could "substantially predominate"

over the claims in this Action, because they raise several issues not being litigated here (e.g.

Bombardier's liability under a separate contract, Bombardier's request for an anti-suit

injunction), and the remedies they seek (declaratory judgments on the separate Bombardier

contract, an anti-suit injunction, vacatur of the Letters of Request) are more complicated than

the straightforward claim here (a determination of who breached the SOCPROP-ATS

Agreement).

Third, and importantly, the Court may decline the exercise of supplemental

jurisdiction if "there are other compelling reasons for declining jurisdiction."  28 U.S.C.

§ 1367(c)(4).  Compelling reasons abound here.  Bombardier has admitted that its dispute

with SOCPROP has virtually no nexus to New York.  The parties are all foreign and the

aircraft was manufactured and delivered to SOCPROP in Canada (*see* Memorandum in

Support of Proposed Intervenors' Motion for Permissive Intervention and to Vacate Letters of

11

Request ("Bombardier Mem. of Law") at 19). All of the relevant documents and witnesses
are located abroad, not here in New York. The Bombardier Agreement is governed by
English law. There is therefore no legitimate reason for the Court to exercise jurisdiction
over claims so clearly unrelated to the United States. As this Court noted in *Dar El-Bina
Engineering & Contracting Co. v. Republic of Iraq*, "[t]he United States has little if any
interest in providing a forum for the resolution of those aspects of this case involving the
alleged breach of the guarantees of any of the notes save Tikrit Note 1. The parties to the
guarantees and the notes all are foreign. The obligations are denominated in foreign
currencies. The place(s) for performance were abroad." 79 F. Supp. 2d 374, 387-88
(S.D.N.Y. 2000) (holding that, if it had supplemental jurisdiction over the dispute, court
would decline to exercise it based on 28 U.S.C. § 1367(c)(4)); *see also In re N.Y. Trap Rock
Corp.*, 160 B.R. 876, 881 (S.D.N.Y. 1993) (declining to exercise supplemental jurisdiction
over Chapter 11 debtor's claims against Argentine entities where "[t]he only significant
connection between the Argentine entities and the United States appears to be that a U.S.
entity, Lone Star, purchased a 50% interest in them and then sought to reorganize in this
country under Chapter 11 of the Bankruptcy Code"), *aff'd in part and rev'd in part on other
grounds*, 42 F.3d 747 (2d Cir. 1994).

Finally, a court may decline to exercise supplemental jurisdiction where there
is an alternative forum -- here, the Moscow Court -- where the other claims are already
pending. *See Philip Morris Inc. v. Heinrich*, No. 95 Civ. 0328, 1998 WL 122714, at *1-2
(S.D.N.Y. Mar. 19, 1998)) (declining to exercise supplemental jurisdiction where movant "is
able to obtain the relief he seeks in his third-party complaint in another forum."); *see also
Kleiman v. O'Neill*, No. 03-CV-3829, 2008 WL 5582453, at *3 (E.D.N.Y. Dec. 30, 2008)
(declining to exercise supplemental jurisdiction where "this Court's inquiry into the factual

dispute at issue here would significantly overlap with the investigation occurring in Texas, creating exceptional circumstances that weigh in favor of declining to exercise supplemental jurisdiction").

When a court decides to decline supplemental jurisdiction, it must also consider the values of economy, convenience, fairness and comity. *See MTBE Products*, 613 F. Supp. 2d at 442 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)). Economy and convenience weigh in favor of declining jurisdiction here, because "no judicial resources have been invested" by this Court in considering Bombardier's claims. *See id.* at 445. Comity and fairness also weigh in favor of declining jurisdiction, because a foreign court has already started to adjudicate the Bombardier dispute, and the litigation should be allowed to proceed there.

## IV.     THE REQUIREMENTS FOR PERMISSIVE INTERVENTION HAVE NOT BEEN MET

Aside from the jurisdictional defects with its intervention motion, Bombardier cannot satisfy the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b). Its motion is untimely, there is insufficient overlap between this Action and the Russian Proceeding, and intervention would prejudice SOCPROP with no comparable prejudice to Bombardier, as it has an alternative forum in which to litigate the dispute.

### (A)     Bombardier's Motion is Not Timely

It cannot be disputed that a motion for permissive intervention "may be granted only if it is timely," and timeliness is "'a threshold consideration under Rule 24(b).'" *Blohm Voss v. The M/V Olympia Explorer*, No. 05 Civ. 7753, 2006 WL 2472044, at *2 (S.D.N.Y. Aug. 4, 2006) (citation omitted); *see also Hnot v. Willis Group Holdings, Ltd.*, 234 F. App'x 13, 14 (2d Cir. 2007) ("The first factor [of an intervention motion] -- the length of

time between when an applicant knew or should have known of his interest before making his motion -- is '[a]mong the most important.'" (alteration in original) (citation omitted)). Bombardier's motion fails to meet this threshold requirement.  Assuming Bombardier is correct, and it has an interest in this Action, then that interest arose in February 2009; yet Bombardier waited over nine months to bring this motion.  Indeed, SOCPROP informed Bombardier Inc. on November 18, 2008 that "[w]e hold Bombardier *fully responsible* for our current situation of owning two aircraft and not having a current buyer for 9076 [the Aircraft] at $45m."  (Heagren Aff. Ex. A at 2 (emphasis added); *see also* Heagren Aff. ¶ 10.)

   This Action started as, and continues to be, a contract dispute between SOCPROP and ATS.  The only new development is that Bombardier belatedly decided that it wants to intervene here, because litigating in Russia does not suit it.  The attempt to intervene is untimely and should be denied on that basis.  *See Blohm Voss*, 2006 WL 2472044 at *2 (holding that, where intervenors who sought to set aside a default judgment *in rem* had waited a full year after entry of the judgment, the intervention was untimely); *see Hnot*, 234 F. App'x at 13 (motion for intervention, brought fifteen months after party learned her interests were not adequately represented, held to be untimely).

   Further, Bombardier's claim that it had "no reason" to expect to be sued by SOCPROP before the Russian proceedings began in September 2009 is undermined by its request, *in June 2009*, that SOCPROP agree to a general release in return for the deposition of two Bombardier employees.  And, on July 13, 2009, after SOCPROP indicated that it was not able to agree to such a broad release, Bombardier informed it that it was treating this Action "as a potential litigation involving Bombardier."  (Aguiar Aff. ¶¶ 9-10; *id.* Ex. C.) Yet Bombardier moved to intervene five months after requesting a general release.  Under the circumstances, this intervention request is untimely.  *See Mastercard Int'l Inc. v. Visa*

*Int'l Service Ass'n*, 471 F.3d 377, 390 (2d Cir. 2006) (holding that motion for intervention

was untimely where it was brought five months after commencement of action); *see also*

*Esther Sadowsky Testamentary Trust v. Syron*, No. 08-CV-5221, 2009 WL 1285982, at *2

(S.D.N.Y. May 6, 2009) (motion for intervention untimely where intervenors waited over

three months after grounds for their intervention arose).

  **(B)**  **The Actions Do Not Share Common Questions of Law and Fact**

    The claims in the Russian Proceeding are far from "substantially intertwined"

(*See* Bombardier's Mem. of Law at 13) with this Action.  The two disputes involve two

completely separate contracts governed by the laws of different countries.  This Action

focuses on whether ATS improperly terminated its contract with SOCPROP, an agreement

governed by New York law.  The Russian Proceeding, conversely, focuses on whether

SOCPROP can enforce a trade-in provision in its separate contract with Bombardier.  That

agreement is governed by the laws of England and Wales.  The facts in this Action rest

predominantly on correspondence and documents between SOCPROP on ATS, while the

other action concerns communications between SOCPROP and Bombardier- there is thus

insufficient overlap for intervention.  *See Chautauqua County v. Int'l Ins. Co.*, No. 88-557E,

1989 WL 13461, at *2 (W.D.N.Y. Feb. 15, 1989) (denying permissive intervention where

plaintiff's "action is for interpretation of an exclusion in its insurance agreement," whereas

the "[the intervenor's] underlying negligence suit . . . do[es] not have any bearing on this

case").

    The only facts relating to Bombardier that are relevant to this dispute involve

discussions between Bob Horner and ATS in the summer of 2008, and Mr. Horner's

representation to SOCPROP regarding those discussions.  However, these facts are far from

being the "center" (*see* Bombardier's Mem. of Law at 14) of both actions.  SOCPROP's main

claim in this Action is that it was not required to deliver the Aircraft in September 2008 because the Amendment Agreement contained no set date for delivery. Mr. Horner's representations of what ATS said regarding delivery simply confirm this fact. SOCPROP's main claim in the Russian Proceeding is to enforce the trade-in Provision of the Bombardier Agreement.

The legal overlap in the two disputes is even more skeletal. This Action involves claims brought under New York law. The Russian Proceeding involves claims that must be decided under English law. The heart of this Action is a breach of contract claim, which rests on the argument that, because the Amendment Agreement did not require SOCPROP to deliver the Aircraft to ATS in September 2008, it thus had a reasonable time to deliver the Aircraft beyond September. Under the Uniform Commercial Code ("U.C.C."), if a time for delivery is not specified then delivery "shall be [in] a reasonable time." N.Y. U.C.C. Law § 2-309(1) (McKinney 2002). ATS's termination of the Agreement was improper, as it did not provide SOCPROP with a "reasonable time" for delivery.

Bombardier attempts to manufacture nonexistent arguments to fabricate legal overlap with the Russian Proceeding. It claims that "the issue of justifiable reliance," i.e., whether it was reasonable for SOCPROP to rely on alleged assurances that ATS would accept delivery of the Aircraft in October, is "[c]ommon to both [actions]." (Bombardier's Mem. of Law at 14.) But justifiable reliance is not mentioned *anywhere* in SOCPROP's Complaint. Bombardier further speculates that SOCPROP intends to rely on U.C.C. § 2-709, which provides that a seller may recover the price of goods when it "is unable after reasonable effort to resell them at a reasonable price." (*Id.* at 15.) SOCPROP, however, has

16

not alleged that it will rely on this section of the U.C.C.[3]

Bombardier's attempt to intervene and inject irrelevant and collateral legal issues into this Action should be rejected. *See Mitchell v. Faulkner*, No. 07 Civ. 2318, 2009 WL 585882, at *5 (S.D.N.Y. Mar. 5, 2009) (denying intervention where movants were not parties to the contract at issue, had no direct interest in the action justifying their intervention and thus their "proposed action does not share a question of law or fact in common with the main action before the Court"); *see also Metzler v. Bennett*, No. 97-CV-0148, 1998 WL 187454, at *10 (N.D.N.Y. Apr. 15, 1998) (denying intervention where the plaintiff had brought an action under one provision of ERISA, whereas the movant's claim "is based upon different ERISA provisions" and "arises out of a different factual context").

### (C)   SOCPROP Will Be Prejudiced If Bombardier Is Permitted to Intervene

SOCPROP and ATS are involved in a relatively straightforward contractual dispute. Should the Action proceed as is, it could very well conclude within a matter of months. Bombardier's intervention would result in far more than "incidental discovery delays," and Bombardier's suggestion that all discovery (including Bombardier's) could be completed by January 2010 is totally unrealistic. (*See* Bombardier's Mem. of Law at 2, 21.) It will result in additional pleadings (a new complaint, answers and counterclaims), briefing on an anti-suit injunction motion, and additional discovery of all sorts. In such circumstances, a court may deny intervention. *See United States v. Visa U.S.A., Inc.*, No. 98 Civ. 7076, 2000 WL 1174930, at *2 (S.D.N.Y. Apr. 18, 2000) (denying intervention where it "would 'unduly

---

[3]   It should be noted that two other sections of the U.C.C. that SOCPROP may rely on -- U.C.C. § 2-708(1) (providing that a seller generally may recover from a breaching buyer the difference between the contract price and the market price of the goods) and U.C.C. § 2-706(1) (providing that a seller generally may recover from a breaching buyer the difference between the contract price and the resale price) -- would not involve any legal overlap with the Russian proceedings.

delay or prejudice the adjudication of the rights of the original parties,' Fed. R. Civ. P. 24(b),

by imposing additional and unnecessary burdens -- in the form of new discovery, evidence,

and even legal issues -- on the resolution of the matter before [the court]").

       These additional pleadings and discovery greatly outweigh the minimal

overlap between the two actions, and counsel against permitting intervention.  "Balanced

against the minimal factual overlap are the inevitable complication and delay which would be

occasioned by the proposed intervention:  'Additional parties always take additional time.

Even if they have no witnesses of their own, they are the source of additional questions,

objections, briefs, arguments, motions and the like which tend to make the proceeding a

Donnybrook Fair.'"  *Alston v. Coughlin*, 109 F.R.D. 609, 614 (S.D.N.Y. 1986) (motion for

intervention denied where the factual overlap was held to be minimal) (citation omitted); *see

also Union Switch & Signal v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485, 492

(S.D.N.Y. 2005) (denying intervention in a "relatively simple contract claim" where "post-

intervention litigation may require far more extensive discovery and require a lengthier trial");

*CCS Commc'n Control, Inc. v. Law Enforcement Assocs.*, Inc., No. 84 Civ. 1274, 1984 WL

756, at *1 (S.D.N.Y. Aug. 13, 1984) (denying intervention where it would "raise extrinsic

issues").

       Further, Bombardier's intervention will inject a new legal system into the mix,

because the Bombardier contract is governed by English law.  "The difference in the choice

of law provisions could inject complex legal issues, collateral to this case, of sufficient

magnitude to weigh against intervention."  *Nat'l Am. Corp. v. Federal Republic of Nigeria*,

425 F. Supp. 1365, 1372 (S.D.N.Y. 1977) (denying intervention where the choice of law

provisions in the two intervenors' contracts were different from the choice of law provision in

the plaintiff's contract).

**(D)  Bombardier Will Not Suffer Prejudice
If It Is Not Permitted to Intervene**

All of the reasons that Bombardier offers regarding the prejudice it will suffer are fraught with inaccuracies.  First, SOCPROP does not intend to use any discovery from this Action in the Russian proceedings.  Nor can it; the parties have signed a Stipulated Protective Order Regarding Confidentiality of Discovery Materials to that effect.  (*See* Aguiar Aff. ¶ 7; *id.* Ex. B.)  What is more, SOCPROP is not seeking document discovery from Bombardier.  (*See* Mainguy Aff. ¶ 6.)  What Bombardier really appears to be arguing is that it will be prejudiced because there are "marked differences in the pretrial practice in the United States and Russia."  (*See* Bombardier's Mem. of Law at 18.)  Such differences do not provide justification for Bombardier to intervene here, in an attempt to avoid a legitimate action against it in Russia.  *See AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (denying motion for permissive intervention where movant sought to obtain discovery in federal action as "an attempt to circumvent the close of discovery in his State Court Action"); *see also MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 253 (S.D.N.Y. 1999) ("[W]hile MLC complains about the British courts' more limited discovery . . . these differences . . . do not render the London forum 'inadequate' within the meaning of the law.").

Second, contrary to Bombardier's argument, SOCPROP is not seeking a party deposition of Mr. Horner.  It is seeking Mr. Horner's deposition because of relevant discussions he had with ATS, and SOCPROP's Letter of Request articulates three narrow areas of inquiry for this deposition.  (*See* Fishman Aff., Ex. M. at 2.)  None of these areas of inquiry are aimed at obtaining discovery which SOCPROP might use in the Russian Proceeding.

19

Third, the Moscow Court does not necessarily have to treat any rulings of this Court as "evidence." (*See* Bombardier Mem. of Law at 19.) It may in its discretion consider the findings of this Court that are relevant to the Russian Proceeding, but it does not have to accord them "due weight" and can make its own determination on such issues. (*See* Rozenberg Decl. ¶ 21.)[4] Bombardier will also not be prevented, by the findings of this Court, from making any of its arguments in the Russian Proceeding. *See N.Y. Regional Interconnect Inc. v. Pataki*, No. 07-CV-122, 2007 WL 1490823, at \*6 (N.D.N.Y. May 15, 2007) (holding that equitable considerations weighed against permitting intervention where "[w]hile . . . it is possible that the outcome of this action may provide persuasive authority adverse to the interests of proposed intervenors, proposed intervenors will not be collaterally estopped from asserting their arguments [in another proceeding].").

Fourth, Bombardier cannot seek to intervene based on an argument that it does not like where it is being sued (*see* Bombardier's Mem. of Law at 19). As Bombardier acknowledges, "some of the funds used to purchase the Aircraft" may have come from Russia (*id.* at 20) and the individual who used the Aircraft was resident and employed in Russia. (Heagren Aff. ¶ 4.) Thus, it was certainly foreseeable that a litigation relating to Bombardier's contract with SOCPROP could be commenced in Russia. The Bombardier Agreement had no forum selection clause, despite the fact that it clearly was drafted by Bombardier and is the quintessential "form contract." It is on Bombardier letterhead and contains Bombardier's boilerplate terms. (*See* Fishman Aff. Ex. D.) If Bombardier, a sophisticated multinational corporation, wanted to include a forum selection clause in its

---

[4]   Bombardier actually acknowledges this point because it states elsewhere in its Memorandum of Law that the Moscow Court may not give "preclusive effect" to a decision of this Court and may make its own determination of an issue previously before this Court. (*See* Bombardier Mem. of Law at 20. )

standard contract, it could and should have done so. *See MasterCard Int'l Inc. v. Argencard Sociedad Anonima*, No. 01 Civ. 3027, 2002 WL 432379, at *9 (S.D.N.Y. Mar. 20, 2002) (denying motion to enjoin party from continuing Argentine proceedings where "although there is some overlap between the two litigations, that overlap arises from the business decisions of the parties to include a New York forum selection clause in the By-laws but not in the License Agreement.")   The Moscow Court has now ruled that it can hear the case, and Bombardier must appear before that court if it wishes to object.[5]

Where an alternative forum already exists for a dispute, intervention may be denied. "Whatever the outcome of this proceeding, therefore, proposed intervenors will have a full and fair opportunity to litigate their claims in the PSC proceeding and in any subsequent judicial proceedings." *N.Y. Regional Interconnect*, 2007 WL 1490823, at *6 (denying permissive intervention where intervenors had an alternative forum in which they were able to fully litigate the issues); *see also Union Switch & Signal*, 226 F.R.D. at 492 ("'The effect of denial of permissive intervention is a relevant discretionary factor.  If an adequate remedy is available to the applicant in another action, the effect of denying permissive intervention in an existing action is mitigated.'" (quoting 6 James Wm. Moore et. al., *Moore's Federal Practice* § 24.10[2][d] (3d ed. 2003)).

Finally, it is not clear what "U.S. due process principles" the Russian

---

[5]   SOCPROP also strongly contests Bombardier's allegation that an anti-suit injunction would be warranted. Federal courts in the U.S. are loathe to enjoin a party from pursuing foreign proceedings in the absence of a threat to the court's jurisdiction or an important U.S. public policy being litigated in the foreign proceeding. Bombardier has presented no evidence of the former, and as SOCPROP's claim against Bombardier is based on English law and on events occurring outside of the U.S., the latter is not triggered. *See China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 37 (2d Cir. 1987) ("Because the Korean litigation poses no threat to the jurisdiction of the district court or to any important public policy of this forum, we conclude that the district court abused its discretion by issuing the injunction."); *see also MasterCard Int'l Inc.*, 2002 WL 432379, at *12 (refusing to issue an injunction where "the Argentine litigation does not threaten either the jurisdiction of this Court or any important public policies identified by the parties").

Proceeding supposedly has violated.  (*See* Bombardier Mem. of Law at 20.)  The Moscow

Court has held that it may hear the claim, but it has also ruled that it will serve Bombardier

pursuant to the Hague Service Convention and has afforded Bombardier the chance to

present objections to SOCPROP's claims.  (*See* Aguiar Aff. Ex. G.)  Pursuant to Russian

procedural law, it is the court, and not the parties, that effects service.  (*See* Rozenberg Decl.

¶¶ 11-15.)  Further, it is not the role of a U.S. court to impose its due process requirements on

a foreign court.  *See Scheiner v. Wallace*, No. 93 Civ. 0062, 1996 WL 633418, at *11

(S.D.N.Y. Oct. 31, 1996) (dismissing plaintiff's claim for violations of due process rights in

connection with an English proceeding, because "once a trial is instituted in a foreign forum,

the laws of that forum govern the proceedings, and American concepts of due process are

simply not implicated").  Moreover, both Bombardier entities are foreign parties and the

SOCPROP-Bombardier dispute has no nexus to this forum or, indeed, to any forum in the

United States.[6]

### (E)      There Are No Other Circumstances Supporting Intervention

Contrary to Bombardier's argument, the "first-filed rule" should apply here.

The Russian Proceeding was commenced almost two months before Bombardier moved to

intervene in this Action, and it is that court that should decide -- and, in fact, has decided --

whether to proceed with the case in Moscow.[7]  The cases cited by Bombardier also support

---

[6]     Further, should SOCPROP prevail in this Action, Bombardier will suffer no harm as it is ATS, not
Bombardier, from whom SOCPROP seeks damages here.  "Visa is not prejudiced if it is denied
intervention since its absence from the litigation is not the cause of any harm Visa may suffer if
MasterCard prevails in this lawsuit." *See Mastercard Int'l Inc.*, 471 F.3d at 391.

[7]     Several of the cases cited by Bombardier actually support this point.  "[I]t is the court in which the first-
filed action was brought that should decide whether an exception to the first-filed rule applies." *Citigroup
Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 555, 557 n.4 (S.D.N.Y. 2000); *see also Motion Picture Lab.
Technicians Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 18-19 (2d Cir. 1986) (applying the first-
filed rule); *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 332 (S.D.N.Y 1998) (same).

the argument that a second-seized court generally will break with this rule only where: (i) there is a forum selection clause or arbitration clause which a party is seeking to avoid by pursuing litigation elsewhere, *see Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 315 (S.D.N.Y. 1986) (enforcing forum selection clause and dismissing causes of action brought before it in violation of such clause); *see also Ermenegildo Zegna Corp. v. Lanificio Mario Zegna S.P.A.*, No. 85 Civ. 6066, 1996 WL 721079, at *8 (S.D.N.Y Dec. 13, 1996) (court stayed proceedings and compelled arbitration in Milan, Italy pursuant to applicable arbitration agreement); or (ii) the dispute has ample connections to the district in which the second-seized court is located. *See Motion Picture Lab. Technicians*, 804 F.2d at 18 ("The location of the instant dispute was in Florida, the parties operate out of Florida, and the repercussions of the arbitrator's decision will be felt exclusively in Florida . . . ."). Bombardier does not cite a single case where a second-seized court enjoined a *foreign* party from proceeding against another *foreign* party before a *foreign* court where the dispute *had no connection* to the second-seized court.

Bombardier also argues that "[c]omity considerations are not impacted just because two courts consider the same matter." (*See* Bombardier Mem. of Law at 23.) But it then cites a case that holds that where a court is seized with a matter already brought before a foreign court, the court may dismiss the Action if it is "duplicative" of or "sufficiently similar" to the earlier-filed foreign action. *See Herbstein v. Bruetman*, 743 F. Supp. 184, 188-89 (S.D.N.Y. 1990). Bombardier has claimed that "the overlap of issues, both factual and legal, is pronounced and genuinely difficult to dispute" (*see* Bombardier Mem. of Law at 15) in the two actions. Thus, *Herbstein* would appear to counsel towards this Court denying

intervention in deference to the Russian Proceeding.[8]

As an addendum, Bombardier's contention that SOCPROP is attempting "to frustrate intervention by bringing an action" in Russia (*see* Bombardier's Mem. of Law at 23) is nonsensical. SOCPROP commenced the Russian Proceeding in September 2009, and certainly could not have been attempting to frustrate an intervention motion in New York that was not filed until *two months later*.

## V.   BOMBARDIER'S MOTION TO VACATE THE LETTERS OF REQUEST SHOULD BE REJECTED

### (A)   SOCPROP Is Not Attempting to "Abuse" Its Discovery Requests

SOCPROP is not seeking a "party" deposition of Mr. Horner (*see* Bombardier Mem. of Law at 24), as neither he nor Bombardier is a party to this dispute. Nor is it seeking document discovery from Mr. Horner. In its motion before the Superior Court in Canada, it has simply retained the right to request any documents which Mr. Horner might refer to during his deposition. (*See* Mainguy Aff. ¶ 6.) And, as discussed above, SOCPROP has stipulated that it will not use any discovery obtained in this Action in any other legal proceedings, which includes the Russian Proceeding. SOCPROP had not commenced any action against Bombardier when it submitted the Letters of Request to this Court. It was thus under no obligation to "disclose" an action that had not been brought. (*See* Bombardier's Mem. of Law at 24, n. 6.) SOCPROP's Letter of Request was filed to obtain the deposition of Mr. Horner on certain very narrow issues related to this Action. (*See* Aguiar Aff. Ex. D, Letter of Request to the Superior Court of Quebec, Canada at 5.)

---

[8]   In *Herbstein*, the second-seized U.S. federal court actually denied dismissal on comity grounds because "[the plaintiff's] action does not replicate his Argentine litigation." *Herbstein v. Bruetman*, 743 F. Supp. at 188. It is not clear why Bombardier relies on this case, considering it is arguing that the Russian Proceeding *does* essentially "replicate" this Action.

**(B)** **Bombardier's Motion to Defeat the Letters
of Request Is Before the Wrong Court**

The Superior Court in Canada has set a date in early 2010 to rule on Mr.

Horner's objections to SOCPROP's motion to take his deposition. For Bombardier to

demand that this Court vacate the Letters of Request is procedurally improper; *it is the court*

*where the evidence is being sought* that should decide whether to grant the request.

"Whether the Letter of Request will ultimately be executed . . . is unknown. Such a decision

is best left to the judicial authorities in the United Kingdom." *Metso Minerals Inc. v.*

*Powerscreen Int'l Distribution Ltd.*, No. CV 06-1446, 2007 WL 1875560, at *3 (E.D.N.Y.

June 25, 2007) (granting motion for Letter of Request to take deposition of witness located in

Northern Ireland); *see also Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp.

2d 469, 474-75 (D. Del. 2003) (granting letters rogatory addressed to Dutch court and stating

that Dutch court should decide problems with the request for evidence).

## CONCLUSION

For all the foregoing reasons, SOCPROP respectfully requests that

Bombardier's Motion for Permissive Intervention and to Vacate Letters of Request be denied.

Dated:     New York, New York
           December 2, 2009

Respectfully submitted,

 /s/  Lauren Aguiar
By:  Lauren E. Aguiar
(Lauren.Aguiar@skadden.com)
Colm P. McInerney
(Colm.McInerney@skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
212-735-3000

Attorneys for Plaintiff

25