

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SOCPROP S.à.r.l.,                              :

                            Plaintiff,         :        09 Civ. 00955 (BSJ) (GWG)
                                               :        **ECF CASE**
            - against –                        :        <u>Electronically Filed</u>
                                               :
Aero Toy Store, LLC                            :
                                               :
                            Defendant.         :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BOMBARDIER INC. AND                            :
BOMBARDIER TRANSPORTATION                      :
GMBH                                           :
                                               :
                            Proposed Intervenors.  :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## AFFIDAVIT OF PAUL HEAGREN

PAUL HEAGREN, being duly sworn, deposes and says:

1.      I am an employee of MHC (Services) Limited. I am the individual with primary
responsibility for advising SOCPROP S.à.r.l. ("SOCPROP") on the purchase and sale
of corporate aircraft.

2.      I make this affidavit based on my own personal knowledge in support of SOCPROP's
Opposition to Bombardier Inc.'s and Bombardier Transportation GmbH's Motion to
Intervene and to Vacate Letters of Request.

3.      On September 20, 2005, SOCPROP entered into an Aircraft Purchase Agreement
with Bombardier Inc. (the "Bombardier Agreement") whereby it agreed to purchase a
Global Express XRS (the "XRS Jet") for $41.85 million.

4.  Bombardier knew, at the time it entered into the contract, that the individual who would be the primary user of the XRS Jet was resident in Russia and employed in Russia at that time.

5.  The Bombardier Agreement provided that it "shall be governed by and interpreted in accordance with the internal laws of England and Wales, excluding any conflicts of law provisions thereof." (Id., Article 4.5.) It did not contain any forum selection or arbitration clause.

6.  Under the Bombardier Agreement, Bombardier was to deliver the XRS Jet for SOCPROP's inspection and acceptance in Dorval, Quebec on or before March 31, 2008. (Id., Article 2.2.) Article 12.1 of the Agreement is a trade-in provision, whereby SOCPROP could trade in its current aircraft -- a Global Express aircraft serial/number 9076 (the "Aircraft") -- to Bombardier for $31 million. (Id., Article 12.1.) In order to exercise the trade-in option, SOCPROP was required to notify Bombardier "at least 90 days prior to the scheduled presentation date referred to in Article 2.2." (Id.)

7.  There were several delays with the delivery of the XRS Jet, and SOCPROP granted Bombardier multiple extensions. Bombardier finally delivered the XRS Jet to SOCPROP in Dorval, Quebec on November 10, 2008.

8.  SOCPROP had separately agreed with Aero Toy Store, LLC ("ATS") to sell it the Aircraft. SOCPROP wanted to coordinate delivery of the Aircraft to ATS with taking possession of the XRS Jet, and ATS understood and agreed to this. Accordingly, SOCPROP's contract with ATS contained no set date for it to deliver the Aircraft.

9.  Bob Horner of Bombardier Aerospace informed me, in the summer of 2008, that he

2

had discussions with ATS and that ATS agreed to extend SOCPROP's anticipated

delivery date of the Aircraft and that it also agreed to increase its deposit under the

agreement with SOCPROP to $5 million.  SOCPROP is seeking to depose Mr.

Horner in its New York Action against ATS to examine him on the discussions he

had with ATS on these two points.  In October 2008, despite what Mr. Horner had

represented, ATS then attempted to unilaterally terminate its agreement with

SOCPROP and refused to accept delivery of the Aircraft.

10.     On November 18, 2008, SOCPROP wrote to Bombardier, stating that it held it

responsible for the failure of ATS to accept delivery of the Old Aircraft and

demanding that it purchase the Old Aircraft for USD$45,000,000.  (P. Heagren letter

to G. Hachey, November 18, 2008, attached hereto as Ex. A.)  Bombardier refused.

(S. Ridolfi letter to P. Heagren, November 27, 2008, attached hereto as Ex. B.)

11.     On December 19, 2008, SOCPROP notified Bombardier that it wanted to invoke the

trade-in provision in the contract and sell it the Old Aircraft.  (C. Bechtel letter to B.

Horner, December 19, 2008, attached hereto as Ex. C.)  Bombardier, however,

refused the trade-in request.  (B. Horner letter to C. Bechtel, January 20, 2009,

attached hereto as Ex. D.)

12.     Upon information and belief, on or about September 8, 2009 SOCPROP commenced

an action against Bombardier Inc. and Bombardier GmbH in Russia (the "Russian

Proceeding").  I understand that the Russian Proceeding focuses on SOCPROP's

contract with Bombardier for the XRS Jet.

13.     SOCPROP engaged local counsel in Russia, the Forum law firm, to represent it in the

Russian Proceeding.  Skadden Arps is not involved in that action.

Paul Heagren

Subscribed and sworn to before me this 2nd day of December 2009.

NOTARY PUBLIC
LONDON, ENGLAND
IAIN A. ROGERS

(My Commission expires with Life)

**CHEESWRIGHTS**
NOTARIES PUBLIC

Bankside House, 107 Leadenhall Street,
London EC3A 4AF
Telephone: 020 7623 9477
Facsimile: 020 7623 5428

4

# Exhibit A

Fax   514 855 7914

# MHC (Services) Ltd

18th November 2008

Guy Hachey
President Bombardier Aerospace
800 Rene Levesque Blvd West
Montreal
Quebec
Canada H3B 1Y8

Dear Mr Hachey

**Global Express LX-FLY s/n 9252**

We represent Socprop SARL, the owner of the above aircraft which was delivered by Bombardier last week seven months later than the contracted date and we need your help to resolve the issues created by the late delivery.

In August 2005 we contracted to purchase 9252 with the idea to sell or trade in our current Global s/n 9076 at the time of delivery.   Redacted

Redacted

In February 2008 we reached an agreement with a buyer to purchase 9076 for $45m originally for delivery to coincide with 9252, ie 31st March 2008. We were then informed by yourselves on February 25th (only 35 days before the due date) that 9252 would be late with delivery July 11th, we therefore amended the agreement with our buyer and signed a formal agreement with them in March 2008 for handover in July.

On 9th May you informed us of further delays till 12th September at which time we managed to persuade our Buyer to extend handover of 9076 till late September.

It soon became clear that the 12th September date was unlikely to be met, although no official correspondence was received to notify us of that further delay. We met with Bob Horner at Farnborough Airshow on 16th July where it was confirmed that delivery would be in October. Bob also confirmed that he had spoken to our buyer and persuaded them to extend the date for handover of 9076 to match our acceptance of 9252 in late October.

However, it soon became apparent that our Buyer was not willing to commit to this agreement and they looked for an excuse to exit from our contract as we were unable to give them a firm date in October for handover.

5th Floor, Chelsea Football Club, Stamford Bridge, Fulham Road, London SW6 1HS
Tel: + 44 (0) 20 7958 2150  Fax: + 44 (0) 20 7958 2887
MHC (Services) Ltd Registered in England N° 4292843 VAT N° 786 5954 59

CONFIDENTIAL

SOC 00194

# MHC (Services) Ltd

You finally confirmed that 9252 was ready for delivery late on 7th November enabling us to complete on November 10th.

We hold Bombardier fully responsible for our current situation of owning two aircraft and not having a current buyer for 9076 at $45m. Whilst you have agreed to market the aircraft free of charge, we have no confidence that a sale will be achieved soon or at a value of $45m and therefore we will be out of pocket by a significant sum being the difference in purchase price achieved as well as the significant holding costs of 9076 (the interest alone we are losing is $150,000 per month on $45m). Our proposal is for you to immediately buy the aircraft from us for $45m so that we can be left in a no loss position.

We look forward to your prompt response

Yours sincerely

Paul Heagren
On behalf of MHC (Services) Limited

cc Bob Horner

5th Floor, Chelsea Football Club, Stamford Bridge, Fulham Road, London SW6 1HS
Tel: + 44 (0) 20 7958 2150  Fax: + 44 (0) 20 7958 2887
MHC (Services) Ltd Registered in England Nº 4292843 VAT Nº 786 5954 59

CONFIDENTIAL

SOC 00195

# Exhibit B

# BOMBARDIER

BUSINESS AIRCRAFT

Bombardier Inc.
400 Côte-Vertu Road West
Dorval, Québec, Canada H4S 1Y9

TEL: (514) 855-5001
FAX: (514) 855-7806

www.bombardier.com

27 November 2008

Mr. Paul Heagren
MHC (Services) Ltd.
5th Floor, Chelsea Football Club,
Stamford Bridge, Fulham Road,
London SW6 1HS

**Subject:**     Reply to Your Letter dated 18 November 2008

Redacted

Dear Mr. Heagren,

Thank you for your letter dated 18 November 2008 to Guy Hachey which has been forwarded to me for reply on his behalf, and which I have read with interest. As a first course of business, please allow me the opportunity to apologize for our inability to provide you and your client with an on-time delivery experience for your new Global Express aircraft. At Bombardier, we recognize that securing and maintaining customer confidence in our ability to complete the timely delivery of aircraft is paramount to sustaining our long-term success in the marketplace.

As you know, our business is one that is built on trust, customer satisfaction, and performance. We realize that as a result of delays and past experience, we still have some work to do to fully regain your confidence; however, please rest assured that now that your aircraft has been delivered and is in service, we stand ready with our dedicated team of sales, administrative, and product support professionals to support you and your operation in order to ensure you receive the finest service and support available, commensurate with your previous expectations and that which you have a right to expect from Bombardier.

In the case of Aircraft 9252 we did, most unfortunately, encounter some difficulties during final completion that disrupted our ability to have the aircraft ready for delivery within the time frame contemplated in the Agreement.

Overall, we recognize that there can be no real excuse for delays or non-performance other than to say that this was not our intent at any time during the process. We highly value our current relationship and we regret any inconveniences caused. Redacted

Redacted

Redacted Additionally, and as you acknowledge in your letter, we are currently supporting your resale efforts for aircraft 9076 with the supply of free of charge

CONFIDENTIAL

SOC 00196

remarketing services via our Pre-Owned Aircraft group, this to help support the sale of 9076 at the earliest opportunity and at the best possible price.

---

Redacted

---

In regards to your demand for Bombardier to purchase 9076 from you for USD $45M, we are unfortunately not prepared to buy-back your aircraft at a market price established some time ago and directly with a 3rd party buyer, but we are willing to continue to support you and continue the full scale remarketing of aircraft 9076 until such time as the aircraft is sold under our current remarketing arrangement.

I would like to apologize once again for your unpleasant experience, and I ask you to please rest assured that for as long as you choose to own and operate Bombardier aircraft, you have our commitment to demonstrate to you that your aircraft investment, together with your selection of Bombardier as your aircraft supplier of choice, has been the right one for you and your business.


Yours very truly,
**BOMBARDIER**

Steve Ridolfi
President
Business Aircraft

cc:     Guy Hachey
        Bob Horner
        Frank Ercolanese

CONFIDENTIAL

SOC 00197

# Exhibit C

*SOCPROP S.a.r.l.*
*Societe a responsabilite limitee*
*65, Boulevard Grande Duchesse Charlotte*
*L-1331 Luxembourg*
*R.C. Luxembourg B 81 623*

19th December 2008

Bob Horner
Bombardier Aerospace
400 Cote-Vertu Road West
Dorval
Quebec
Canada H4S 1Y9

Dear Bob

**Global Express LX-FLY s/n 9252**

We can confirm that we would like to enforce clause 12.1 "Trade In
Agreement" of the agreement dated 29th August 2005 whereby Bombardier
commits to accept title and delivery of Global Express 9076 for $31m.

Socprop reserves the right to claim compensation from Bombardier for
losses arising from the delayed delivery of 9252 (LX FLY)

Yours sincerely

Cornelius Bechtel
Director

cc Steve Ridolfi

# Exhibit D

# BOMBARDIER

BUSINESS AIRCRAFT

Bombardier Inc.
400 Côte-Vertu Road West
Dorval, Québec, Canada H4S 1Y9

TEL: (514) 855-5001
FAX: (514) 855-7806

www.bombardier.com

January 20, 2009

Mr. Cornelius Bechtel
Socprop S.A.R.L.
56 Boulevard Napolean 1er
L-2210 Luxembourg
LUXEMBOURG

**Subject:**

> Redacted

Dear Mr. Bechtel,

Thank you for your letter dated 19 December 2008.

> Redacted

We recognize that Aircraft s/n 9252 was presented in October 2008 and therefore the latest date at which Bombardier would have been in a position to accept this request would have been in July 2008.

> Redacted

Yours sincerely

Bob Horner
Senior Vice-President, Sales
Bombardier Aerospace, Business Aircraft

cc: Christophe Degoumois, Michael Fitzpatrick

CONFIDENTIAL

SOC 00109