PILLSBURY WINTHROP SHAW PITTMAN LLP
Eric Fishman, Esq.
1540 Broadway
New York, New York  10036
Telephone: (212) 858-1000
Telefax: (212) 858-1500

*Attorney for Bombardier Inc. and*
*Bombardier Transportation GmbH*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SOCPROP S.a.r.l.,<br><br>        Plaintiff,<br><br>    v.<br><br>Aero Toy Store, LLC,<br><br>        Defendant. | 09-CV-955 (BSJ)(GWG)<br>ECF Case Electronically Filed |
| Bombardier Inc. and Bombardier Transportation GmbH,<br><br>        Proposed Intervenors. |  |

**REPLY MEMORANDUM IN SUPPORT OF PROPOSED INTERVENORS' MOTION
FOR PERMISSIVE INTERVENTION AND TO VACATE LETTERS OF REQUEST**

## TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................................. 1

    A.    Subject Matter Jurisdiction Exists ................................................................................... 1

        1.    Bombardier's Claims Form Part of the Same Case or Controversy ............................ 1
        2.    No Supplemental Jurisdiction Exception Applies ........................................................ 3

    B.    Leave to Intervene Should Be Granted ............................................................................. 6

        1.    The Motion is Timely .................................................................................................... 6
        2.    The Actions Do Share Common Questions of Law and Fact ...................................... 7
        3.    The Motion Will Not Prejudice SOCPROP .................................................................. 8
        4.    Bombardier Will Be Prejudiced if it Cannot Intervene ................................................ 8

    C.    The Letters of Request Should be Vacated ..................................................................... 10

CONCLUSION ............................................................................................................................ 10

**TABLE OF AUTHORITIES**

**CASES**

*Con Ed, Inc. v. Northeast Util.*,
  2004 WL 35445 (S.D.N.Y. 2004)...........................................................................................5

*Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*,
  79 F. Supp. 2d 374 (S.D.N.Y. 2000).......................................................................................4

*De Asencio v. Tyson Foods, Inc.*,
  342 F.3d 301 (3d Cir. 2003), *cert. denied*, 128 S. Ct. 2902 (2008) ..........................................3

*Exxon Mobil Corp. v. Allapattah Servs,, Inc.*,
  545 U.S. 546 (2005)...............................................................................................................5

*Gibbs Wire and Steel Co. v. Johnson*,
  255 F.R.D. 326 (D. Conn. 2009)............................................................................................5

*Gross v. British Broad. Corp.*,
  386 F.3d 224 (2d Cir. 2004)...................................................................................................4

*In re N.Y. Trap Rock Corp.*,
  160 B.R. 876 (S.D.N.Y. 1993),
  *aff'd in part, vacated in part on other grounds*, 42 F.3d 747 (2d Cir. 1994) ...........................4

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
  140 F.3d 442 (2d Cir. 1998)................................................................................................3, 4

*MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*,
  46 F. Supp. 2d 249 (S.D.N.Y. 1999)......................................................................................9

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007)................................................................................................5, 6

*Philip Morris Inc. v. Heinrich*,
  1998 WL 122714 (S.D.N.Y. 1998).........................................................................................5

*Promisel v. First Am. Artificial Flowers, Inc.*,
  943 F.2d 251 (2d Cir. 1991)...................................................................................................1

*Societe Nationale Industrielle Aerospatiale v. U.S. District Ct.*,
  482 U.S. 522 (1987).............................................................................................................10

*U.S. v Yonkers Board of Ed.*,
  801 F.2d 593 (2d Cir. 1986)...................................................................................................6

*Underpinning & Found. Skanska, Inc. v. Berkley Reg'l Ins. Co.*,
  2009 WL 3363700 (E.D.N.Y. 2009).......................................................................................5

*Viacom Int'l, Inc. v. Kearney*,
 212 F.3d 721 (2d Cir. 2000)..................................................................................5, 6

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
 782 F. Supp. 870 (S.D.N.Y. 1991)........................................................................6, 7

*William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*,
 2009 WL 427280 (S.D.N.Y. 2009)..........................................................................2

## U.S. CODE & STATUTES

28 U.S.C. § 1367(2009) .................................................................................................1

UCC § 2-706(1) ..............................................................................................................2

## OTHER AUTHORITIES

Moore's Fed. Practice 3d § 24.21(3) ..............................................................................6

The same aircraft, delivery representations and damages underlie SOCPROP's disputes with ATS and Bombardier.  As such, the disputes form part of the same case or controversy and fall within the Court's supplemental jurisdiction.  Yet, even though SOCPROP asserts alternative theories of recovery for the same injury (the lost sale of its aircraft), it steadfastly opposes intervention.  Why?  In its brief, the only prejudice SOCPROP identifies is delay, but that cannot withstand scrutiny.  SOCPROP *itself* is making the delay by refusing to have its overlapping dispute with Bombardier venued here or in any forum having a nexus to the dispute that will give collateral estoppel effect to this Court's determinations.  The reason is obvious and (inadvertently) stated in its brief: SOCPROP is trying to get a double recovery in Moscow.  And towards that end, it advances a litany of arguments intended to create the impression that intervention would be too complicated.  As shown below, it is all smoke-and-mirrors.  The issues Bombardier seeks to raise are simple and directly impact the claims before the Court.  Only by considering the entire controversy in one forum can a just and coherent result be assured.

## ARGUMENT

**A.     Subject Matter Jurisdiction Exists**[1]

   *1.     Bombardier's Claims Form Part of the Same Case or Controversy*

While SOCPROP correctly notes the absence of complete diversity, it incorrectly says that this Court lacks supplemental jurisdiction.  Courts "shall have supplemental jurisdiction over claims" by an intervenor that "form part of the same case or controversy" unless an exception applies.  28 U.S.C. § 1367(a)(2009).  The exercise of supplemental jurisdiction "is a favored and normal course of action."  *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991).  Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact."  *Id*. (omitting citations and quotations).

---

[1]     All exhibit citations refer to the exhibits attached to the November 2, 2009 Affirmation of Eric Fishman.

1

SOCPROP says that Counts I and III of Bombardier's complaint are "wholly unrelated" to the claims in this action because they involve "Bombardier's contract with SOCPROP." Pl. Br. 10. The test for whether claims form part of the same case or controversy is not whether there are different contracts involved, but whether the same facts underlie both contract disputes. *See, e.g., William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mutual Ins. Co.*, 2009 WL 427280, at *14 (S.D.N.Y. 2009) (exercising jurisdiction over dispute involving separate contracts where claims "derive from the common nucleus of operative facts of who – owner, contractors or subcontractors – is liable for delay and extra work damages").

Looking beyond contract labels here, the same facts give rise to both disputes. Count I of Bombardier's complaint seeks a declaration that SOCPROP cannot exercise a trade-in option pertaining to its aircraft – the same aircraft at issue here. SOCPROP says the option can still be exercised because of its reliance on representations by Bombardier and ATS – the same representations at issue here. SOCPROP's detrimental reliance supposedly caused it to lose its sale to ATS – the same sale now being contested. SOCPROP seeks $45 million as a result of its lost trade-in option and sale to ATS – damages that entirely duplicate those sought here.

This last fact bears emphasizing. Plaintiff says that "whether SOCPROP recovers damages from Bombardier does not impact its contract claim against ATS." Pl. Br. 2. Were SOCPROP correct, it could recover $45 million from Bombardier in Moscow for the aircraft *and* recover damages from ATS for the *same aircraft*. SOCPROP is ignoring mitigation principles: if it can recover for the lost sale from one party, it cannot recover again from the other. SOCPROP knows this. It says that it may seek damages from ATS under UCC § 2-706(1) for "the difference between the contract price and the resale price." Pl. Br. 17 n.3. Here, the "resale price," if any, will be that which it can recover from Bombardier on the trade-in of its aircraft.

2

Each of the other counts in Bombardier's proposed complaint likewise concern the same operative facts: Count II seeks a declaration that Bombardier has no liability for ATS's refusal to accept delivery of the aircraft; Count III seeks a declaration that Bombardier Transportation is not liable for the lost sale of the aircraft to ATS; Count IV seeks to enjoin the Moscow Action because it encroaches on this Court's ability to fashion a proper remedy; and Count V addresses what discovery should happen in these proceedings. We could elaborate upon each count, but we think the point is obvious. In a three-way dispute over who is responsible for SOCPROP not being able to dispose of its aircraft – SOCPROP, ATS or Bombardier – it stands to reason that the claims be tried together, for they form part of the same case or controversy.

### 2.     *No Supplemental Jurisdiction Exception Applies*

The "discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Itar –Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). SOCPROP says that an exception exists because Bombardier's claims "could 'substantially predominate' over claims" here. Pl. Br. 11 (quoting § 1367(c)(2)). That is not realistic. The "substantially predominate" exception is invoked only when the new claims "constitute the real body of a case" and the original claims are rendered "only an appendage." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003). Given the overlapping facts (same aircraft, same representations, etc.), that will not happen here.

As for the contract issues unique to Bombardier, they could not be more simple, such as whether SOCPROP can exercise an option that has expired or recover consequential damages in the face of a consequential damages exclusion. Such issues (if they be issues at all) will not predominate. And the notion that the English choice of law clause in Bombardier's contract "could inject complex legal issues" (Pl. Br. 18) deserves no weight: "there are few if any countries in the world whose body of law is more amenable to application in the United States

3

than Great Britain's . . . . [W]e do not believe application of such law creates a burden on the court." *Gross v. British Broad. Corp.*, 386 F.3d 224, 233-34 (2d Cir. 2004).

SOCPROP next says that the Court should decline jurisdiction because of "other compelling reasons." Pl. Br. 11 (quoting § 1367(c)(4)). In quoting the statute, however, it omits that a court may find "compelling reasons" only "in exceptional circumstances." *Id.* "The use of 'exceptional circumstances' indicates that . . . the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual." *Itar –Tass Russian News Agency*, 140 F.3d at 448.

No exceptional circumstances exist here. SOCPROP says that jurisdiction should not be exercised because Bombardier's claims lack a U.S. nexus. Pl. Br. 12. No they don't. The trade-in of the aircraft was to occur in the Connecticut. Ex. D, ¶ 12.2. Further, in the cases SOCPROP cites, the courts declined jurisdiction over non-U.S claims *where they dismissed the underlying action*. *See* Pl. Br. 12, citing *Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 387-88 (S.D.N.Y. 2000) (declining jurisdiction in case lacking nexus to U.S. where no other claims remained); *In re N.Y. Trap Rock Corp.*, 160 B.R. 876, 881 (S.D.N.Y. 1993) (same).[2] Declining supplemental jurisdiction in such a case makes sense.

But, not here. The claims over which this Court has original jurisdiction remain, and the new claims directly impact them (especially the remedy). Thus, when SOCPROP says that there is "no legitimate reason for the Court to exercise jurisdiction over claims so clearly unrelated to the United States," Pl. Br. 12, it overlooks the principle reason: to prevent SOCPROP from

---

[2] The *Dar El-Bina* Court indicated that it would have declined supplemental jurisdiction even if it had retained jurisdiction over the original claim because the supplemental claims involved foreign parties, with obligations "denominated in foreign currencies," which obligations involved "performance . . . abroad" and, most importantly, potentially implicated "sensitive political matters with which courts are not equipped to deal." 79 F. Supp. 2d at 388. Here, by contrast, performance of the trade-in was to be in the U.S., the obligations were denominated in U.S. dollars and no political matters are at stake.

4

getting a duplicative recovery for the same aircraft here and abroad. *See Con Ed, Inc. v. Northeast Util.*, 2004 WL 35445, at *7 (S.D.N.Y. 2004) (exercising jurisdiction and permitting intervention to avoid "the risk of duplicative litigation and double liability").

SOCPROP also says that there are compelling reasons to decline jurisdiction because another forum exists. But, as its own authorities show, a court should retain jurisdiction, notwithstanding an alternative forum, to "avoid inconsistent results from identical or similar evidence." *Philip Morris Inc. v. Heinrich*, 1998 WL 122714, at *2 (S.D.N.Y. 1998) (declining jurisdiction over those claims "separate from and independent of the issues to be litigated in the main action," but, significantly, retaining jurisdiction over claims closely related to the main action notwithstanding the availability of another forum) (cited at Pl. Br. 12).

Finally, SOCRPOP argues that supplemental jurisdiction should not reach claims of an intervening defendant seeking "solely to assert a new claim against a nondiverse plaintiff." Pl. Br. 10. There is no such exception in § 1367. *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 727 (2d Cir. 2000) (holding that restrictions on supplemental jurisdiction in § 1367(b) do not apply to counterclaims asserted by non-diverse defendants joined in action); *Con Ed*, 2004 WL 35445, at *4, n.3 ("[Section] 1367(b) does not prevent a non-diverse defendant-intervenor from pursuing claims against the plaintiff.").[3] Since supplemental jurisdiction must be exercised unless an enumerated exception applies, jurisdiction over Bombardier's claims exists here.

---

[3] In *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007), the Second Circuit limited *Viacom*, holding that there must be complete diversity among plaintiffs and defendants joined under Rules 19 and 20. It has been suggested that this holding is based on a misreading of *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005), which states that "it *cannot be the case* that the presence of [joined or intervening] parties destroys the court's original jurisdiction" given the language of § 1367(a). *Id.* at 564. *See Gibbs Wire and Steel Co. v. Johnson*, 255 F.R.D 326, 328 (D. Conn. 2009) ("It is not clear to the Court that *Exxon* required a repudiation of *Viacom. Exxon* does not . . . discuss the complete diversity requirement or the contamination theory in the context of third-party claims."). In any event, *Merrill* did not change the rule of *Viacom* that courts have supplemental jurisdiction over claims asserted by non-diverse defendants intervening under Rule 24 (as opposed to those joined under Rules 19 and 20 who a strategic plaintiff may intentionally omit in order to create diversity). *See Underpinning & Found. Skanska, Inc. v. Berkley Reg'l Ins. Co.*, 2009

5

**B.      Leave to Intervene Should Be Granted**

   *1.      The Motion is Timely*

SOCPROP argues that Bombardier is too late because its "interest in this Action . . . arose in February 2009" when the case was filed. Pl. Br. 14. SOCPROP focuses on the wrong date: "Knowledge of the pendency of the litigation is not the relevant date for [the timeliness] factor, because it would encourage intervention before the applicant had sufficient knowledge regarding the potential ramifications of the action on the applicant's interests." Moore's Fed. Practice 3d § 24.21(3); *see also U.S. v Yonkers Bd. of Ed.*, 801 F.2d 593, 595 (2d Cir. 1986) (in evaluating timeliness, court "must not consider merely the length of time the litigation or proceeding has been pending"). "[K]nowledge of an action's impact on the movant's interests, rather than knowledge of the pendency of the action, is the relevant date . . . ." *Id.* at § 24.21(3).

Here, although SOCPROP had earlier said that Bombardier was responsible for its lost sale, Bombardier did not have an actual interest in this action until SOCPROP commenced the Moscow proceedings. A simple thought-experiment shows why. Suppose in February 2009, Bombardier had sought to intervene. What might it have said, that "SOCPROP has not asserted any claims against us, we believe that it has no basis for doing so, we cannot discern the basis for any such lawsuit, but we nonetheless seek to intervene just in case"?[4]

One should not seek to intervene based on "just-in-case" interests, lest courts be overrun with such motions. In *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870 (S.D.N.Y. 1991), the court permitted an owner of collateral for a bond to intervene

---

WL 3363700, at *3, 5-6 (E.D.N.Y. 2009) (exercising supplemental jurisdiction over counterclaims of intervening non-diverse defendant under *Viacom*, while declining jurisdiction over claims against non-diverse defendant joined under Rule 19 pursuant to *Merrill*).

[4]   SOCPROP makes no effort to defend the merits of its claims in Moscow. To the contrary, SOCPROP's counsel here seems to go out of its way to emphasize that it has nothing to do with the claims asserted abroad. *See* Aguiar Aff. ¶ 15; Heagren Aff. ¶ 13. Thus, Bombardier's contention that it had no reason to think that SOCPROP would actually try to pursue its questionable claims goes wholly unrebutted.

6

two years after its potential interest in the case arose because the it "did not have a direct interest in the action until [plaintiff] made its motion to compel payment of the bond." *Id.* at 874. Likewise, here, until SOCPROP stated the bases for its claims, and asserted them in a forum where it could recover duplicative amounts and leverage its unequal access to information, there was nothing Bombardier could or should have done.  As such, this application is timely.

### 2. *The Actions Do Share Common Questions of Law and Fact*

In a strange set of arguments, SOCPROP contends that there is not even a common issue of fact or law.  Pl. Br. 15-17.  It says that damages do "not involve any legal overlap," Pl. Br. 17 n.3, even though the very UCC section it cites requires any damages against ATS to be reduced by any resale amounts recovered from Bombardier.  Next, it says that the Bombardier/ ATS/SOCPROP conversations create but a "tenuous overlap."  Pl. Br. 2, 15.  Yet they form the *entire basis* of both the claims against Bombardier and the promissory estoppel claim against ATS.  These discussions also bear on how to construe delivery ambiguities in the ATS contract, and whether ATS breached the implied covenant of good faith.  That is why, in seeking a Letter of Request, SOCPROP said these discussions concern "the subject matter of this dispute" (Ex. F at 5) and are "highly relevant to the claims and defenses at issue in this case."  *Id.* at 7.

Next, SOCPROP denies the overlapping issue of reliance, saying "justifiable reliance is not mentioned *anywhere* in SOCPROP'S complaint."  Pl. Br. 16 (emphasis in original).  Yes it is.  In its Complaint, SOCPROP says that it "*reasonably and foreseeably relied*" upon delivery promises given by Bombardier and ATS.  Ex. B ¶ 47.  Likewise, in its dispute with Bombardier, SOCPROP claims that, "relying on the warranties" made by Bombardier that ATS would accept the aircraft after September, it delayed delivery and did not exercise its option.  Ex. C at 4-5.

SOCPROP can deny all it wants, but these actions involve identical issues.

7

### 3. The Motion will Not Prejudice SOCPROP

The only prejudice SOCPROP claims is delay, which should not bar intervention. *First,* insofar as this Court determines that recoveries (if any) from Bombardier impact damages (if any) here, resolution of the two disputes will happen concurrently, regardless of where they are tried. *Second,* SOCPROP does not deny the extremely small universe of discovery in this action – a few hundred pages of documents and a few depositions (with those of ATS and Bombardier still to be taken). The additional discovery from intervention will be minimal, and this Court's consideration of a discrete injunction motion will have limited impact on the case schedule. ATS, we note, which has its own claims against SOCPROP, has no objection to intervention. *Third,* if there is delay, it is of SOCPROP's making. The only reason Bombardier seeks to intervene is because SOCPROP brought an action in a forum having no nexus to the dispute – a fact not earnestly contested – where there can be duplicative recoveries and other inconsistent rulings because of the absence of collateral estoppel, as well as unequal access to information. If such forum shopping causes some delay, so be it. SOCPROP caused the situation.

### 4. Bombardier Will Be Prejudiced if it cannot Intervene

SOCPROP says there should be no concern about proceeding in Moscow because Bombardier will "not be collaterally estopped from asserting" its arguments there. Pl. Br. 20. The problem is *not* that Bombardier will be estopped, but that SOCPROP *won't* be. The importance of this cannot be overstated. SOCPROP, for example, might recover millions of dollars from ATS, but because there is no collateral estoppel, be able to recover the same damages again in Moscow. As another example, SOCPROP may be found not to have breached its contract with ATS, but because there is no collateral estoppel, be able to contend in Moscow (as it does) that Bombardier caused it to breach the ATS contract. Bombardier's inability to raise a collateral estoppel defense could literally cost it tens of millions of dollars – prejudice, indeed.

As for unequal discovery, SOCPROP says it is not seeking documents (Pl. Br. 19), but the Letter of Request asks the Quebec Court to give SOCPROP the "right to seek documents that Mr. Horner discloses during his examination." Ex. G at 6.  SOCPROP next says that it will not be able to use documents in Moscow, but ignores that the Protective Order permits discovery materials (other than trade secrets, which are not at issue) to "be included as necessary in court filings." Aguiar Aff. at ¶¶ 1, 3.  Thus, SOCPROP can put into the public record *anything* it later wishes to use.  This is not "crying" about procedures in Moscow, as SOCPROP says, it is objecting that only Bombardier will be subject to them.[5]

Nor is Bombardier complaining that "it does not like where it is being sued."  Pl. Br. 20.  Bombardier is objecting to forum-shopping.  SOCPROP sued in Moscow (which has no nexus to the dispute) based on the Moscow office of Bombardier Transportation (a stranger to the relationship) for two improper reasons: (i) to deprive Bombardier of a collateral estoppel defense and thus attempt to secure a double recovery and (ii) to exploit the fact that it will have full discovery here, while Bombardier will have virtually none over there.  If that is incorrect, then why won't SOCPROP have the entire case tried here, where it is already litigating these matters?

SOCPROP says that it is not forum-shopping because its agreement with Bombardier "had no forum selection clause" (Pl. Br. 20) – a true, but irrelevant point.  SOCPROP has no right to bring an action in Moscow (or in any other forum lacking a dispute nexus), whether or not a forum clause exists.  SOCPROP's argument that Bombardier should raise its concerns in Moscow (Pl. Br. 21) is likewise beside the point.  *First*, as SOCPROP's expert notes, challenges to the jurisdiction of the Moscow Court will not likely be heard prior to the hearing in June 2010.

---

[5] The authorities SOCPROP cites (Pl. Br. 19) where courts will not take jurisdiction just because another tribunal has different procedures involve cases where *both* parties will be subject to them, not just one.  *See, e.g., MLC (Bermuda) Ltd. V. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 252-54 (S.D.N.Y. 1999) (dismissing suit in deference to pending suit in London where both parties would be subject to same procedures).

Rozenberg Decl. ¶ 15.  Intervention then would be too late.  *Second*, regardless of whether Bombardier makes an application in Moscow, it must still take steps in this Court (or, if necessary, another Court) to have the case properly venued.  *Third*, SOCPROP's contention that "first-filed" issues should be addressed to the Court first seized of jurisdiction applies to *SOCPROP's* arguments, not Bombardier's.  Bombardier is not invoking the first-filed rule.  Thus, no matter what issues are raised in Moscow, these proceedings must still occur.

C.     **The Letters of Request should be Vacated**

Bombardier's challenge to the Letters of Request should be heard here, not in Quebec.  The location for such a challenge depends upon its nature.  If a discovery request is said to be inconsistent with the laws of a non-US jurisdiction, then the challenge should be made abroad, as SOCPROP's authorities indicate.  However, where, as here, the challenge concerns issues that the requesting court is best able to adjudicate, it should be addressed to the requesting court.  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct.*, 482 U.S. 522, 546 (1987) (requesting court should guard against "any special problem confronted by the foreign litigant").  Further, as SOCPROP knows, the Quebec Court already indicated that such challenges should be brought here.  Melchers Aff. ¶ 8.  Thus, when SOCPROP says "go to Quebec" (like it says "go to Moscow"), it knows it is pointing to the wrong Court, but hoping to get away with it.  This Court, we respectfully submit, should not let it.

## CONCLUSION

For all of the foregoing reasons, Bombardier requests that its Motion for Permissive Intervention and to Vacate the Letters of Request be granted.

Dated: New York, New York
December 14, 2009

        PILLSBURY WINTHROP SHAW PITTMAN LLP

        Respectfully submitted,

        s/ Eric Fishman
        Eric Fishman, Esq.
        1540 Broadway
        New York, NY  10036-4039
        (212) 858-1000

        Attorney for Proposed Intervenors
        *Bombardier Inc. and Bombardier*
        *Transportation GmbH*